(39 Misc. Rep. 719.)

## BARNEY v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County.   February, 1903.)

**1.** INJUNCTION—RAPID TRANSIT TUNNEL—UNAUTHORIZED CONSTRUCTION.

The Rapid Transit Railroad Commissioners unlawfully constructed the rapid transit tunnel between certain streets 28 feet too far to the east. It appeared that if its construction was enjoined as a public nuisance, and the commissioners were required to cause it to be filled solid, and have a new tunnel constructed farther west, in the proper location, the expense would be about $700,000, and a delay of several years would result. The unlawful construction diminished by drilling and blasting an abutting owner's peaceful enjoyment of his property, though the annoyance resulting was not much in excess of what it would have been had the tunnel been built according to the adopted plans. The portion of the tunnel thus irregularly constructed is nearly completed. *Held,* that under all the circumstances an injunction would not be granted, but the owner was entitled to a bond indemnifying him against all possible loss.

Action by Charles T. Barney against the city of New York, the Board of Rapid Transit Railroad Commissioners, and others for an injunction.   Denied.

Masten & Nichols, for plaintiff.

George L. Rives, Corp. Counsel, for defendant city of New York.

Edward M. Shepard and Boardman, Platt & Soley, for defendant Board of Rapid Transit Com'rs.

Nicoll, Anable & Lindsay, for defendant John B. McDonald.

LEVENTRITT, J.   Two public considerations have controlled my disposition of this application—that of the public safety and that of the public interest.   The first has regard to the present;   the latter to the immediate future.   It is not to be gainsaid that there has been in this section of Park avenue a substantial and as yet unauthorized deviation from the established plan.   It is unnecessary to review the reasoning leading to this conclusion, as I find myself in accord with its sequence, as contained in Barney v. City of New York, 38 Misc. Rep. 549, 77 N. Y. Supp. 1083.   If anything, the plaintiff builds a stronger case in this action which he brings to protect his property rights by way of injunction than in the former suit which he brought under the statute as a taxpayer.

The plaintiff seeks in this action to enjoin the further construction of the rapid transit tunnel in front of his premises on Park avenue. The present easterly wall of the tunnel follows a line only 7 feet distant from his house line, whereas the original plan, as filed and adopted, shows the easterly extremity between 27 and 28 feet farther west.   The plaintiff claims that the present construction, with its blasting and steam drilling and attendant noises, violates the peaceful enjoyment of his property and its appurtenant easements, while the prospective operation of the road threatens serious permanent injury.   The complaint is framed on the theory of public nuisance, with allegations of special damage to the plaintiff.   The injunctive relief prayed for is that not only the further construction of the tunnel along the present line be enjoined, but that the excavation so far

made be filled in, and the subsurface restored, so near as may be, to its previous condition.

That the present construction is unauthorized must be conceded. So, too, it may be admitted that the plaintiff shows resulting damage special to himself; but yet, after careful consideration, I am satisfied that the injunction asked should not issue. Were the entire construction on or under Park avenue, wherever placed illegally and unauthorized, there could be no question in any case of the plaintiff's right to the relief asked. That, however, is not the situation here. Were the easterly tunnel about 28 feet farther west its lawfulness would be beyond attack. The damage, therefore, on which the plaintiff can predicate his prayer, is not the damage for the entire tunnel construction, but only for the excess resulting from the more easterly construction. Or, to speak in mathematical terms, it is the total damage resulting from the authorized westerly construction subtracted from that resulting from the unauthorized more easterly construction which gives the amount of special injury to the plaintiff on the basis of which he can come into a court of equity with the form of action he has adopted. While the difference of damage is appreciable and measurable, I am not satisfied that it is large. The plaintiff does not claim that his foundation walls are impaired. The chief complaint is due to the blasting and drilling, present and prospective vibration, and, to some extent, the impeded approach to his building by the presence of various temporary structures in the streets. So far as the blasting and drilling are concerned, together with their attendant noises and vibrations, there is this to be said: The affidavits satisfy me that this portion of the work is nearly completed, and that the increased noise, if any, is minimal. With reduced charges of dynamite as the house line is approached, it by no means follows that the noise and vibration of detonation is necessarily greater. So far as the temporary structures are concerned, they are sufficiently accounted for by the concededly legal part of the structure—the westerly tunnel.

Were this merely an action between private individuals, or even an ordinary action against the municipality, the extent of the plaintiff's special damage might be immaterial. Slight damage would be sufficient to enjoin the continuance of the nuisance. Beekman v. Third Ave. R. R. Co., 153 N. Y. 144, 47 N. E. 277; Adler v. Metropolitan El. R. Co., 138 N. Y. 173, 33 N. E. 935. But this is not the ordinary case, and it is one which, in my opinion, justifies the application of the rule that where the damage resulting from the allowance of the injunction to the defendant far exceeds that resulting to the plaintiff from its disallowance, the equitable arm of the court should not be raised in restraint. Gray v. Manhattan R. Co., 128 N. Y. 509, 28 N. E. 498; Riedeman v. Mount Morris Electric Light Co., 56 App. Div. 23, 67 N. Y. Supp. 391. It is here that the minimal excess of damage suffered by the plaintiff by the present structure over that he would have suffered had the road been constructed according to the original plan becomes most material.

In McElroy v. Kansas City (C. C.) 21 Fed. 261, Mr. Justice Brewer well states the recognized rule thus:

"A chancellor, in determining an application for an injunction, must regard, not only the rights of the complainant, which are sought to be protected, but the injuries which may result to the defendant or to others from the granting of the injunction. If the complainant's rights are of a trifling character, if the injury which he would sustain from the act sought to be enjoined can be fully and easily compensated, while on the other hand, the defendant would suffer great damage, and especially if the public would suffer a large inconvenience if the contemplated act was restrained, the lesser right must yield to the larger benefit; the injunction should be refused and the complainant remitted to his action for damages. * * * If the improvement was one of great public importance, the court would justly regard that as a reason for not lightly interfering with the work, while if the improvement was more of a personal speculation, and for private gain, the prior protection of the complainant would be most rigorously insisted on. Thus, if in the center of a large and thriving city like the defendant some improvement was contemplated which the necessities of business proclaimed to be urgent, the court on no slight consideration should interfere to delay or restrain it; while, on the other hand, if it was some matter in the outskirts of the city, having obviously principal reference to the private speculation of the individual, and of no earnest or urgent demand of public good, the attention of the court would be properly directed to the full protection of the complainant's prior right."

It is unnecessary at this late day to descant on the great public importance or the urgency of the improvement it is sought to enjoin. Our own Appellate Division has characterized it as "an imperious necessity." Matter of Rapid Transit Commissioners, 23 App. Div. 472, 49 N. Y. Supp. 60. This was five years ago. If it was imperious then, it is difficult to find an adjective that will adequately express the crying need of the present hour. A traffic-congested city awaits the opening of the underground railroad like a deliverance and the fulfillment of a prophecy. The court should not lightly interfere to postpone the opening of the road by even a single day. The slight injury to the plaintiff is quite lost in the magnitude of the public improvement and the large public need.

Quite a different question might be presented if the illegality complained of were incurable. If the entire construction were unauthorized, and could never be validated, the plaintiff, upon adequately showing irreparable damage peculiar to himself, might see his rights rise paramount even in this form of action. But the deviation from the established plan can be made legal. Rapid Transit Act (Laws 1894, p. 1885, c. 752) § 38. Failing to obtain consent of the property owners, application may be made to the Appellate Division to sanction the departure from the original plan. The preliminary steps to this end have been taken, and the affidavits contain the assurance that the proper form of application is about to be made. While the court will ordinarily concern itself only with the existing facts, I believe I am justified, in view of the public interests involved, of taking the ultimate and probable correction of the unsanctioned step into consideration. In any event this should be considered on the application for the preliminary injunction, and the parties should be left to establish their final status on the trial.

Lastly, considerations of the public safety compel the denial of the broad relief asked by the plaintiff. It has already been shown that the tunnel in front of his premises is well-nigh completed; the blasting and drilling are almost over; the side walls are constructed

and are prepared to receive the mason work arch which will support the overlying surface of the street. The present support is of timber. This must be replaced by the arch, necessitating the removal of some of the roof rock. I am quite satisfied by the expert affidavits submitted that the rock is of a shaley, treacherous character, liable to rapid disintegration by the chemical action of the air and the percolation of water. There has already been one dangerous subsidence in this locality, and to avoid its repetition, or similar accidents, considerations of safety require that this section of the tunnel be brought to a stable condition with the least delay. That done, all other questions may be left to the trial. Before the running of the first train·the issues herein will be reached for trial, and the application to legalize the construction ·be passed upon by the Appellate Division. To direct at this stage the filling in with concrete of the present excavation, and the building a new tunnel farther west, at a total expense of perhaps $700,000, and a delay of several years—as appears from the affidavits—when the ultimate result may be the removal of the filling and the authorized use of the present excavation, would hardly be consonant with the public interest.

The plaintiff, however, should have a bond to indemnify him against all possible loss. Any directions in the order, not inconsistent with the prosecution of the work as here sanctioned, which he deems necessary for his protection, I am disposed to give him, and I will hear counsel on this point on the settlement of the order.

Ordered accordingly.