BARNEY *v.* THE CITY OF NEW YORK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 159.  Argued March 3, 4, 1904.—Decided March 21, 1904.

Where the jurisdiction of the Circuit Court is invoked on the ground of deprivation of property without due process of law in violation of the Fourteenth Amendment, it must appear at the outset that the alleged deprivation was by act of the State.

And where it appeared on the face of plaintiff's own statement of his case that the act complained of was not only unauthorized, but was forbidden, by the state legislation in question, the Circuit Court rightly declined to proceed further and dismissed the suit.

THIS was a bill to enjoin the city of New York, the Board of Rapid Transit Commissioners for New York, John B. McDonald and the administratrix of Shaler, deceased, from proceeding with the construction of the rapid transit railroad

tunnel under Park avenue, New York, adjacent to the premises of Charles T. Barney, "until the easements appurtenant thereto shall have been acquired according to law and due compensation made therefor to complainant;" and from constructing such railroad otherwise than in accordance with the routes and general plan adopted and approved by the local authorities and by the owners of abutting property, or the Appellate Division of the Supreme Court in lieu thereof.

From the bill it appeared that the Rapid Transit Board had, on behalf of the city, devised routes and general plans, and entered into a contract for the construction of a rapid transit railroad with McDonald, of whom Ira A. Shaler was a subcontractor, under the Rapid Transit Acts of the State, Laws 1891, c. 4; Laws 1892, c. 102, 556; Laws 1894, cs. 528, 752; Laws 1895, c. 519; Laws 1900, c. 729; Laws 1901, c. 587; Laws 1902, cs. 533, 542, 544, 584.

Park avenue was one of the streets under which the railroad was authorized to be built, and the routes and general plan of the road were prescribed by the board by resolutions of January 14 and February 4, 1897, which received the assent of the local authorities and of the Appellate Division of the Supreme Court in lieu of the consent of the abutting property owners.

Complainant alleged that he "consented to the construction of the said rapid transit railroad in accordance with the said routes and general plan of construction, and did not oppose the proceedings hereinafter mentioned, which the said Board of Rapid Transit Railroad Commissioners instituted for the purpose of obtaining the determination of three commissioners appointed by the said Appellate Division that such rapid transit railroad ought to be constructed and operated; nor did your orator oppose the confirmation of said determination by the said Appellate Division."

But complainant averred that the portion of the railroad under Park avenue and in front of his premises was being built twenty-seven feet nearer to his premises than was authorized

by the routes and general plan; and that the work was "being thus performed by said defendant, McDonald, and the said Shaler without any authority other than certain directions given by the chief engineer employed by the Board of Rapid Transit Commissioners and embodied in certain so-called working drawings, or detail drawings, prepared by him or at his instance, and recently approved informally by said board. And . . . that the fact that such directions had been given by the chief engineer and that said work was being thus performed by the contractor, as aforesaid, was not until recently specifically known to said board; that such action of said chief engineer and contractor has never been formally or specifically approved by said board; that there has been no change made or authorized by said board in the said 'routes and general plan,' nor has there been any modification of the contract or specifications with reference to the construction of that part of the tunnel lying under Park Avenue between Thirty-third and Forty-first streets; that no notice was given to any of the property owners along said street that it was proposed by the defendants or any of them to change the position of the tunnel to any material extent from the position shown and described in the said 'routes and general plan,' nor was any opportunity ever given to said property owners or the citizens generally to be heard with respect to any such change."

Complainant further averred "that at none of the times herein mentioned did the said Board of Rapid Transit Railroad Commissioners have authority (if at all) to enter into any contract for the construction of any rapid transit railroad under or upon the said Park avenue, except in accordance with the said 'routes and general plan' contained in the said resolutions of January 14 and February 4, 1897, and that at no time did the said board have authority to prepare detailed plans and specifications, except (if at all) in accordance with the said general plan of construction or to alter any plans or specifications prepared by them, excepting in accordance with said general plan of construction. That the act of the

said board in permitting the defendants' McDonald and the said Shaler to enter upon that part of Park avenue between Thirty-third and Forty-first streets where the tunnel is now in process of construction, as aforesaid, was illegal and un-authorized, and the defendants McDonald and the said Shaler have entered upon the same unlawfully and without authority; and for the further reason that the construction of the rapid transit railway on the easterly side of Park avenue, in front of your orator's said premises, takes his property without due process of law, in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States, and that said rapid transit act, so far as it purports to authorize the construction of a tunnel and railway in said Park avenue without the consent of abutting owners or compensation there-for, is void, because it deprives your orator of his property without due process of law, in violation of the provisions of the said amendment."

On the bill and affidavits, complainant moved for an injunc-tion *pendente lite*, and defendants resisted the motion, sub-mitting, in pursuance of stipulation, affidavits filed in their behalf in the case of *Huntington* v. *City of New York and others*, the same defendants, since brought here, numbered at this term 173, and argued with this case. The opinion in that case, 118 Fed. Rep. 683, was adopted in this, and the court of its own motion, under section 5 of the act of March 3, 1875, c. 137, entered a decree dismissing the bill for want of jurisdiction, and certified that question to this court.

*Mr. Maxwell Evarts* and *Mr. Arthur H. Masten* for appel-lants in this case and in No. 173.

The theory of the court seemed to be that an agent of the State can only be considered such when it acts in conformity with the specific authority given to it by the act of the Legis-lature creating it, and that if it does any act without express legislative authority, although purporting to act by reason of the power and right conferred upon it by the State, such act

is not done in its character as agent and is not to be deemed the act of the State.

This question, however, is no longer open for argument; any act of an agent of a State, done pursuant to the powers derived by him from the Legislature and by virtue of his public position as such agent, whether specifically authorized by the statute appointing him or not, is an act of the State within the meaning of the Fourteenth Amendment of the Constitution. *Ex parte Virginia*, 100 U. S. 339; *Neal* v. *Delaware*, 103 U. S. 370, 394; *Civil Rights Cases*, 109 U. S. 3, 15; *Yick Wo* v. *Hopkins*, 118 U. S. 356, 374; *Scott* v. *McNeal*, 154 U. S. 34; *Missouri Pacific Ry.* v. *Nebraska*, 164 U. S. 403; *C., B. & Q. R. R. Co.* v. *Chicago*, 166 U. S. 226, 233.

In *N. C. & St. L. Ry.* v. *Taylor*, 86 Fed. Rep. 168, the statute itself was held unconstitutional. *Blake* v. *McClung*, 172 U. S. 239, involved a dispute over the state statute. In *Riverside & A. Ry. Co.* v. *Riverside*, 118 Fed. Rep. 736; *Vicksburg Water Works Co.* v. *Vicksburg*, 185 U. S. 65, the action complained of was action by a municipal legislature.. In *Bancroft* v. *Commissioners*, 121 Fed. Rep. 874, the act complained of was the taxing of property by commissioners to whom the State had directly delegated the power to tax. *Water Works Co.* v. *San Francisco*, 124 Fed. Rep. 574, involved the improper exercise of a power to fix rates to be paid for water supply, directly delegated to local authorities by the Legislature.

The court below was without jurisdiction for the reason that the bill of complaint did not show that the appellant was threatened with the deprivation of any property.

The fee of the streets of New York belongs to the city itself. Hoffman, Estate and Rights of the Corporation of New York, 368; *People* v. *Kerr*, 27 N. Y. 188; *Kellinger* v. *Forty-second Street Railway Co.*, 50 N. Y. 206, 211; *Matter of New York C. & H. R. R. R. Co.*, 77 N. Y. 248; *Drake* v. *Hudson River R. R. Co.*, 7 Barb. 508. The only easements which the appellant has in the street are easements of light, air and access. *Story* v. *N. Y. El. Ry. Co.*, 90 N. Y. 122; *Bischoff* v. *N. Y. El. R. R.*,

138 N. Y. 257, 262; *American Bank Note Co.* v. *New York El. R. R. Co.*, 129 N. Y. 252, 271, and cases cited.

Although guilty of a deviation of some thirty feet from the duly filed routes and general plan hereinbefore referred to, the Board of Rapid Transit has acted in the name of and for the State, and from purely public motives. It has been clothed with the State's power, and its acts, even though now held by the court below to have been unauthorized, were in point of fact carried through solely by virtue of the authority conferred upon it by the State, and because of the power derived from the Legislature. See *Reagan* v. *Farmers' Loan and Trust Company,* 154 U. S. 362.

As to what constitutes the act of a State with reference to the provisions of the Fourteenth Amendment to the Federal Constitution, see *Iron Mountain R. Co.* v. *Memphis,* 96 Fed. Rep. 113; *Pacific Gas Imp. Co.* v. *Ellert,* 64 Fed. Rep. 421, and cases cited on p. 429.

*Mr. Edward M. Shepard* for the appellees, members of the Rapid Transit Board, and *Mr. Platt A. Brown,* with whom *Mr. DeLancey Nicoll* was on the brief, for appellee McDonald:

In view of the decisions of the state court and for the purposes of this case it must be assumed that the construction complained of by the appellant is in violation of the laws of New York and without any authority from the State of New York. So that the controversy is one between parties all of whom are citizens of the State of New York in the course of which the sole question is whether the laws of that State have or have not been violated by the acts of the defendants. Such a controversy, as we submit, belongs to the courts of the State itself. *Arrowsmith* v. *Harmoning,* 118 U. S. 194; *Virginia* v. *Rives,* 100 U. S. 313; *St. Joseph & Grand Island Co.* v. *Steele,* 167 U. S. 659; *Hartell* v. *Tilghman,* 99 U. S. 547; *United States* v. *Cruikshank,* 92 U. S. 542, 554; *United States* v. *Harris,* 106 U. S. 629, 638.

The fact that the Rapid Transit Commissioners have some duties and powers in the construction of a rapid transit railroad does not commit the State to any acts of theirs in plain excess of their authority. *Missouri* v. *Dockery*, 191 U. S. 165. The rigorous provisions of law already quoted make it clear that the placing of the tunnel of a rapid transit railroad under a part of the street not within the routes and general plan is as clear a violation of law as to place a railroad in an entirely different street or in a different city.

Although the prohibition of the Fourteenth Amendment runs against the State and the State alone, it is not disputed that the State may act by executive officers as well as by its courts or its legislature. *Ex parte Virginia*, 100 U. S. 339; *Chicago, B. & Q. R. Co.* v. *Chicago*, 166 U. S. 226, at p. 233. The unlawful act of a man does not give the party aggrieved a claim against the State or other government of which he was a public officer. *Tindal* v. *Wesley*, 167 U. S. 204; *United States* v. *Lee*, 106 U. S. 196; *Cunningham* v. *Macon & Brunswick R. R.*, 109 U. S. 446, 452; *Stanley* v. *Schwalby*, 147 U. S. 508, 518; *Stanley* v. *Schwalby*, 162 U. S. 255, 271; *Belknap* v. *Schild*, 161 U. S. 10; Guthrie's Fourteenth Amendment, 72; *Kiernan* v. *Multonomah County*, 95 Fed. Rep. 849; *Re Storte*, 109 Fed. Rep. 807; *Manhattan Ry. Co.* v. *City of New York*, 18 Fed. Rep. 195. None of these authorities is weakened by the cases cited by appellants.

The rapid transit railroad in Park Avenue is entirely under ground, and affects neither light nor air nor access of abutters, and the alleged impairment of the comfort to be enjoyed in the plaintiff's premises through the acts of the city and its Rapid Transit Board underneath the surface of its own streets is not a taking of property within the meaning of the Fourteenth Amendment. *Marchant* v. *Pa. R. R. Co.*, 153 U. S. 380; *Meyer* v. *City of Richmond*, 172 U. S. 82; *Gibson* v. *United States*, 166 U. S. 269; *Eldridge* v. *Trezevant*, 160 U. S. 452; *Messenger* v. *M. R. Co.*, 129 N. Y. 502; Guthrie's Fourteenth Amendment, 94; *Pa. R. R. Co.* v. *Miller*, 132 U. S. 75.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The jurisdiction of the Circuit Court was invoked upon the ground that by the tunnel construction sought to be enjoined, complainant was deprived of his property without due process of law, in violation of the Fourteenth Amendment. But that amendment prohibits deprivation by a State, and here the bill alleged that what was done was without authority and illegal.

The city acts through the Rapid Transit Board, which possesses the powers specifically vested. It is empowered to prescribe the routes and general plan of any proposed rapid transit railroad within the city, and every such plan must "contain such details as to manner of construction as may be necessary to show the extent to which any street, avenue or other public place is to be encroached upon and the property abutting thereon affected." Consents of the municipal authorities and the abutting property owners to construction on the routes and plan adopted must be obtained, and any change in the detailed plans and specifications shall accord with the general plan of construction, and, if not, like consents must be obtained to such change.

The bill asserted that the easterly tunnel section under Park avenue was not within the routes and general plan consented to, and that the construction was unauthorized. And this is the view taken by the Supreme Court of New York. *Barney* v. *Board of Rapid Transit Commissioners,* 38 Misc. Rep. 549; *Barney* v. *City of New York,* 39 Misc. Rep. 719; *Barney* v. *City of New York,* 83 App. Div. (N. Y.) 237.

Thus the bill on its face proceeded on the theory that the construction of the easterly tunnel section was not only not authorized, but was forbidden by the legislation, and hence was not action by the State of New York within the intent and meaning of the Fourteenth Amendment, and the Circuit Court was right in dismissing it for want of jurisdiction.

Controversies over violations of the laws of New York are

controversies to be dealt with by the courts of the State.
Complainant's grievance was that the law of the State had been
broken, and not a grievance inflicted by action of the legislative
or executive or judicial department of the State; and the prin-
ciple is that it is for the state courts to remedy acts of state
officers done without the authority of or contrary to state law.
*Missouri* v. *Dockery,* 191 U. S. 165; *Civil Rights Cases,* 109
U. S. 3; *Virginia* v. *Rives,* 100 U. S. 313.

In *Virginia* v. *Rives,* referring to an alleged denial of civil
rights on account of race and color in the empaneling of a
jury, the laws of Virginia in respect of the selection of juries
appearing to be unobjectionable, Mr. Justice Strong, speaking
for the court, said:

"It is evident, therefore, that the denial or inability to en-
force in the judicial tribunals of a State, rights secured to a
defendant by any law providing for the equal civil rights of all
persons citizens of the United States, of which sec. 641 speaks,
is primarily, if not exclusively, a denial of such rights, or an
inability to enforce them, resulting from the constitution or
laws of the State, rather than a denial first made manifest at
the trial of the case. In other words, the statute has reference
to a legislative denial or an inability resulting from it. . . .

"When a statute of the State denies his right, or interposes
a bar to his enforcing it, in the judicial tribunals, the pre-
sumption is fair that they will be controlled by it in their de-
cisions; and in such a case a defendant may affirm on oath what
is necessary for a removal. Such a case is clearly within the
provisions of sec. 641. But when a subordinate officer of the
State, in violation of state law, undertakes to deprive an ac-
cused party of a right which the statute law accords to him, as
in the case at bar, it can hardly be said that he is denied, or
cannot enforce, 'in the judicial tribunals of the State' the
rights which belong to him. In such a case it ought to be pre-
sumed the court will redress the wrong. If the accused is
deprived of the right, the final and practical denial will be in
the judicial tribunal which tries the case, after the trial has

commenced. If, as in this case, the subordinate officer whose duty it is to select jurors fails to discharge that duty in the true spirit of the law; if he excludes all colored men solely because they are colored; or if the sheriff to whom a venire is given, composed of both white and colored citizens, neglects to summon the colored jurors only because they are colored; or if a clerk whose duty it is to take the twelve names from the box rejects all the colored jurors for the same reason,—it can with no propriety be said the defendant's right is denied by the State and cannot be enforced in the judicial tribunals. The court will correct the wrong; will quash the indictment or the panel, or, if not, the error will be corrected in a superior court. We cannot think such cases are within the provisions of sec. 641. Denials of equal rights in the action of the judicial tribunals of the State are left to the revisory powers of this court."

In the *Civil Rights Cases,* in which the court was dealing with the act of March 1, 1875, 18 Stat. 335, c. 114, Mr. Justice Bradley said:

"In this connection it is proper to state that civil rights, such as are guaranteed by the Constitution against state aggression, cannot be impaired by the wrongful acts of individuals, unsupported by state authority in the shape of laws, customs, or judicial or executive proceedings. The wrongful act of an individual, unsupported by any such authority, is simply a private wrong, or a crime of that individual; an invasion of the rights of the injured party, it is true, whether they affect his person, his property, or his reputation; but if not sanctioned in some way by the State, or not done under state authority, his rights remain in full force, and may presumably be vindicated by resort to the laws of the State for redress."

There are many cases in this court involving the application of the Eleventh Amendment which draw the distinction between acts of public officers *virtute officii,* and their acts without lawful right, *colore officii;* and in *Pennoyer* v. *McConnaughy,* 140 U. S. 1, Mr. Justice Lamar defined the two classes to be,

·those brought against officers of the State as representing the State's action and liability, and those against officers of the State when claiming to act as such without lawful authority. The subject is discussed at length and the cases cited in *Tindal* v. *Wesley,* 167 U. S. 204, and *Fitts* v. *McGhee,* 172 U. S. 516. Appellant's counsel rely on certain expressions in the opinion in *Ex parte Virginia,* 100 U. S. 339, but that was a case in which what was regarded as the final judgment of a state court was under consideration, and Mr. Justice Strong also said: "Whoever, by virtue of public position under a state government, deprives another of property, life, or liberty, ·without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State."

And see *Manhattan Railway Company* v. *City of New York,* 18 Fed. Rep. 195; *Kiernan* v. *Multnomah County,* 95 Fed. Rep. 849; *In re Storti,* 109 Fed. Rep. 807.

*Scott* v. *McNeal,* 154 U. S. 34, and *Chicago, Burlington & Quincy Railroad Company* v. *Chicago,* 166 U. S. 226, are cited by appellant, ·but in those cases judgments of the highest judicial tribunals of the State were treated as acts of the State, and no question of the correctness of that view arises here.

And so in *Reagan* v. *Farmers' Loan & Trust Company,* 154 U. S. 362, the general assembly of Texas had established a railroad commission and given it power to fix reasonable rates, with discretion to determine what rates were reasonable. The act provided that suits might be brought by individuals against the commission "in a court of competent jurisdiction in Travis County, Texas," and a citizen of another State sued them in the Circuit Court of the United States for the district which embraced Travis County, and this was held to be authorized by the state statute.

And as the establishment of rates by the commission was the establishment of rates by the State itself, and the determination of what was reasonable was left to the discretion of the com-

mission, their action could not be regarded as unauthorized, even though they may have exercised the discretion unfairly.

Similarly in *Pacific Gas Imp. Company* v. *Ellert,* 64 Fed. Rep. 421, where a public board was given power to improve streets, and proceeded in excess of its powers but not in violation of them, its action was regarded by Mr. Justice McKenna, then Circuit Judge, as state action.

In the present case defendants were proceeding, not only in violation of provisions of the state law, but in opposition to plain prohibitions.

Section 5 of the act of March 3, 1875, 18 Stat. 470, c. 137, provided that if in any suit in the Circuit Court it should appear, to the satisfaction of the court, at any time, that the suit did not really and substantially involve a dispute or controversy properly within its jurisdiction, the court should proceed no further, but dismiss the suit. The last paragraph of this section was in terms repealed by the act of March 3, 1887, 24 Stat. 552, c. 373, reënacted August 13, 1888, 25 Stat. 433, c. 866, (the part repealed not being material here,) but otherwise the section remained and remains in full force. This case went off on the motion for preliminary injunction, and the bill was properly dismissed, whether treated as if heard on demurrer, or on the proofs by affidavit.

*Decree affirmed.*