W. Fred DUCKWORTH, George R. Abbott, Linwood Perkins, Lawrence C. Page, Lewis L. Layton, Roy B. Martin, Jr., and N. B. Etheridge, as Members of the Council of the City of Norfolk, The Council of the City of Norfolk, and Alex H. Bell, as Treasurer of the City of Norfolk, Appellants,

v.

Ruth Pendleton JAMES, a minor, etc., et al., Appellees.

No. 7848.

United States Court of Appeals Fourth Circuit.

Argued April 7, 1959.

Decided May 18, 1959.

Leonard H. Davis and W. R. C. Cocke, Norfolk, Va. (Leigh D. Williams, Norfolk, Va., on brief), for appellants.

Archie L. Boswell, Norfolk, Va., and Edmund D. Campbell, Arlington, Va., for appellees.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

This appeal is taken from an order of the District Court whereby a preliminary injunction was issued against the members of the Council of the City of Norfolk, Virginia, and the Treasurer of the City, restraining them from enforc-

ing or applying the provisions of § 22-127.1 of the Code of Virginia as amended by the laws of the Extra Session of the Legislature of Virginia of 1956, c. 67, and also from enforcing or applying the provisions of certain ordinances of the City Council enacted on November 25, 1958, December 30, 1958 and January 13, 1959, respectively, in such a way as to withhold funds appropriated by the Council for the use of the public schools of the city to bring about the closing of any of the schools by reason of the assignment thereto of children of different races.

The suit was instituted on January 15, 1959, by numerous minor children and their parents of the white race in order to forestall the closing of certain grades in the public schools of the city whereby more than 17,000 pupils would be deprived of public education. The complaint charged that the City Council was engaged in an evasive scheme to nullify certain orders issued or to be issued by the District Court in the suit of James v. Almond, then pending, which had been instituted on October 27, 1958, by some of the plaintiffs herein in order to secure an adjudication that certain statutes passed at the Extra Session of the General Assembly of the State in 1956 were unconstitutional in that they were designed, as part of a plan of massive resistance, to avoid the decisions of the Supreme Court of the United States directing the desegregation of the races in the public schools of the country. In addition, it was alleged in the complaint that there was also pending in the Supreme Court of Appeals of Virginia a suit sub nom. Harrison v. Day, which had been brought to test the constitutionality under the Constitution of the State of some of the same statutes, and it was alleged that decisions in both cases were expected to be filed in accordance with public announcements on January 19, 1959.

These expectations were realized. On that day the Virginia court rendered its decision in Harrison v. Day, 200 Va. 439, 106 S.E.2d 636, wherein it held that the

section of the State Constitution, Const. § 129, which requires the maintenance of a public school system was still in force, although the section of the constitution, Const. § 140 requiring the segregation of the races in the schools had been stricken down by Federal judicial decisions. The Virginia court also held unconstitutional certain statutes of the state designed to prevent the enrollment of white and colored pupils in the same schools by closing them when such an event occurred, and by divesting local school authorities of the power to control the schools and vesting such power in the Governor of the State.

On the same day the District Court below, then composed of three judges, rendered its opinion in James v. Almond, 170 F.Supp. 331, in which it held that the Commonwealth of Virginia, having set up a system of public schools could not, without violating the Federal Constitution, Const. Amend. 14, act through one of its officers to close one or more of the schools on account of the enrollment of children of different races and at the same time keep open other schools on a segregated basis. The nature of the decision of the three-judge court had been anticipated by members of the City Council because it had been held in numerous decisions in this and other Federal Circuits that attempts by State authorities to avoid the decisions of the Supreme Court of the United States were unconstitutional. It was in this posture of public affairs in the State that the pending suit came to trial on January 26, 1959, and the District Judge was asked to issue a preliminary injunction forbidding the enforcement of the enactments above mentioned on the ground that they were designed to avoid the effect of the decisions of the State and Federal courts and to continue the segregation of the races in the public schools of the City of Norfolk.

The case was submitted to the court upon a stipulation of facts and upon uncontradicted testimony offered by the plaintiffs to the following effect as to the conditions prevailing when the ordinances were passed and the suit was brought. The minor plaintiffs were all entitled to enrollment in the schools to which they sought admission if the schools had been in operation. Three senior and three junior high schools had been closed pursuant to a communication from the Governor of the State dated September 27, 1958, acting under Chapter 68 of the Acts of the Legislature passed at the Extra Session of 1956, subsequently held unconstitutional in the cases cited above. This action on the part of the Governor followed the issuance of an order of the District Court, passed on September 18, 1958, and affirmed by this court on September 27, 1958, in School Board of City of Norfolk v. Beckett, 260 F.2d 18, whereby the school board was directed to admit 17 Negro children to certain high schools of the city. By reason of these circumstances the high schools mentioned above were closed to 10,000 white pupils while the colored high schools remained open.

In this situation the City Council on September 30, 1958, prior to the institution of the pending suit, adopted a resolution directed to the Governor and the General Assembly wherein it expressed its earnest desire that the six high schools be immediately opened and operated under a State-operated system provided by statutes passed at the Extra Session of 1956 so that none of the 10,000 children would be delayed in securing the education provided for them by law. The schools, however, remained closed at the time of the institution of the pending suit and until after the decisions of Harrison v. Day and James v. Almond had been passed.

On November 25, 1958, the City Council passed an ordinance making appropriations for the city budget for the calendar year 1959 in the sum of $36,887,440.05, which included the sum of $11,323,338.00 for the public schools, thereby making provision not only for the schools that were open but for the schools that were closed in amounts comparable with those appropriated in previous years. The ordinance recited that, by reason of

the pending legal situation with regard to the public schools, the appropriation for the schools was made on a tentative basis and no part of the funds appropriated should be available to the School Board of the city except as the City Council might, from time to time, authorize by resolution. The City Council also reserved the right to change the appropriation at any time during the fiscal year and to prohibit expenditure of any unexpended portion of the public school funds.

This form of appropriation was made in accordance with §§ 22–126 and 22–127 of the Virginia Code as amended at the Extra Session of 1956. These statutes authorized counties and cities of the State to raise money by local taxation, to be expended by the school authorities for the maintenance of the schools as in their judgment the public welfare required. They also authorized the local governmental authorities to make a cash appropriation, tentative or final, of not less than the sum required by the local school budget for the maintenance and operation of the schools. The governing body of the city was authorized by resolution to direct the School Board of the city or town, and the Treasurer thereof, to make no expenditures of school funds until authorized by the governing body.

On December 30, 1958, the City Council adopted a resolution authorizing the transfer of $1,098,000 to the School Board for its use during the month of January 1959, but stipulated that no part of said sum should be disbursed for the normal daytime operation of the schools then under the control of the Governor of Virginia without his prior approval.

Thereafter, on January 13, 1959, the City Council adopted a further resolution designed to bring about the closing of additional schools of the City of Norfolk, which led to the institution of the pending suit. The ordinance declared that the public welfare of the city required the maintenance and operation of grades 1 to 6 of the public schools of the city but that the City Council did not propose that any part of the funds theretofore appropriated for the city schools for the year 1959 should be paid to the School Board for the maintenance of grades higher than the sixth. The ordinance requested the School Board to make such arrangements as might be necessary to maintain and operate only the first six grades after February 2, 1959. The ordinance, however, provided that the city would assume the payment of the salaries and wages of the employees of the School Board which became due after that date under contracts between them. It was stipulated at the hearing of the pending suit that if this resolution should be carried out, the six white high schools above mentioned would remain closed and, in addition, the higher grades in thirty-six other schools would be discontinued so that the minor plaintiffs and others similarly situated would be unable to attend the schools, and approximately 7,000 additional children of the city, making 17,000 children in all, or 40 per cent of the normal school population, would be deprived of the benefits of a public school education.

These circumstances justified the conclusion of the judge that the action of the City Council was taken as part of the plan of massive resistance adopted by the Extra Session of 1956 to retain segregation in the public schools of the State. A glaring inconsistency is manifest between the earlier action of the City Council and that which was taken later when it became apparent that the plan of massive resistance had failed. On September 30, 1958, the City Council declared that it was necessary for the immediate preservation of the public peace, property, health and safety of the city to provide for the daily operation of the public schools and that for this purpose the closed high schools should be immediately opened and operated, pursuant to the Acts of the Assembly. But on January 13, 1959, when the decisions of the courts above mentioned were imminent, the City Council declared that it was necessary for the immediate preservation of the public peace, property, health and safety that all of the schools

higher than the sixth grade be closed and that none of the funds appropriated therefor should be used for their maintenance and operation.

The only reasonable explanation for this change of view is that the City Council, realizing that the general plan of massive resistance had failed, took steps to avail itself of the authority conferred by § 22–127.1 of the Code to withdraw the appropriation it had already made and thus accomplish at least a part of the original plan. This statute was indeed part of the general scheme which the General Assembly in the Extra Session had enacted. The response to this new plan by a large part of the white population, who desired to keep all the schools open, was the present suit.

In opposition to this conclusion, defendants refer to the testimony of members of the City Council to the effect that the ordinance of January 13, 1959, was passed not to evade constitutional prohibitions against segregation but on account of serious doubts as to the extent to which the State's financial support of the schools would be curtailed and in the genuine belief that serious disorders and destruction of school property would occur if the races were commingled in the public schools; and it is added that the absence of good faith on the part of the Council is not shown by the fact that no disorder actually occurred when the six high schools were opened very shortly after the decisions in Harrison v. Day and James v. Almond had been filed.

■ This testimony, however, is largely offset by the City's assumption of all the contractual obligations of the School Board, which comprised 92 per cent of the total costs of operation, with the result that although all of the grades above the sixth would be closed the teachers would continue to draw their salaries. The excuse that the upper grades were closed in order to avoid violence and disorder is also frail, in view of the fact that desegregation of the lower grades was not contemplated. In any event, the excuse cannot prevail over the established rule that the preservation of the public peace cannot be used to justify the violation of constitutional rights. See *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19. We are of the opinion that the judge's finding as to the purpose and effect of the ordinance was sustained by the evidence.

The defendants nevertheless contend that, even if the purpose of the City Council was to avoid the effect of the judgment of the District Court, the ordinance of the City Council was a valid exercise of the power given it by the Virginia statutes to control the appropriation and expenditure of school funds. It is pointed out that the Federal District Court has no power to regulate or control the Norfolk schools and made no attempt to do so in the judgment in the Beckett case; and that, on the other hand, the City Council is not obliged to adopt the budget submitted to it by the School Board but may appropriate such moneys for the schools as it sees fit and, moreover, has the power under §§ 22–127 and 22–127.1 of the Virginia Code to appropriate school funds tentatively or finally, and if it appropriates funds on a tentative basis, they are not available to the School Board except as the transfer of them may be authorized from time to time by the City Council.

■ The answer to this argument is obvious and clear. The City Council in the ordinance under attack did not confine itself to the area of its discretionary power over appropriations. It went further and invaded the domain of the School Board and attempted to exercise the power to operate the schools vested in the school authorities by the State Constitution when it took steps to bring about the closing of all school grades above the sixth in the city school system. The decision of the Supreme Court of Appeals of Virginia in Harrison v. Day demonstrates the invalidity of this action. It was there shown that § 129 of the State Constitution requires the State to maintain an efficient system of public schools throughout the State and that such a system embraces such factors as a sufficient number of schools with ade-

quate buildings and equipment, a sufficient number of competent teachers and other basic needs associated with the public school system; and that § 133 of the Constitution vests the supervision of the schools in the local school boards and § 136 requires that local school taxes be expended by local school authorities. By reason of these requirements of the Constitution, the court held that the General Assembly of the State could not establish a school system divesting the local school authorities of power and control over the local schools and vesting such authority in the Governor and State Board of Education. Much less can the City Council of Norfolk, notwithstanding its control of the purse, arrogate to itself the power to operate the public schools of the city.

■■ The defendants say, in the alternative, that if the ordinances of the City Council exceeded the powers granted by the statutes of the State they did not constitute State action, and hence the District Court had no jurisdiction to enjoin them as a violation of the Fourteenth Amendment. This proposition cannot be sustained under the existing circumstances. It is "settled that municipal ordinances adopted under state authority constitute state action and are within the prohibition of the amendment", Lovell v. City of Griffin, 303 U.S. 444, 450, 58 S.Ct. 666, 668, 82 L.Ed. 949. In the case of a municipal corporation, the State charter creates the legislative body and grants it power to act within a certain area. In the pending case the City Council was empowered to make appropriations, tentative or permanent, for the support of the schools, and hence the acts of the City Council in a sense became the acts of the State. And even if the power was misused in violation of the Federal Constitution, the Federal courts may issue an injunction in the same way as if an act of the General Assembly of the State had been passed in violation of constitutional rights. Indeed, the decisions go further and confirm the jurisdiction of the Federal courts to enjoin the acts of state officers who have been placed in positions of authority by the state and make invalid use of their power. Questions of this kind are not to be decided under the law of agency with reference to the power of an agent to bind his principal. In Home Tel. & Tel. Co. v. City of Los Angeles, 227 U.S. 278, 287, 33 S.Ct. 312, 315, 57 L.Ed. 510, the Court said:

> " * * * Here again the settled construction of the Amendment is that it presupposes the possibility of an abuse by a state officer or representative of the powers possessed, and deals with such a contingency. It provides, therefore, for a case where one who is in possession of state power uses that power to the doing of the wrongs which the Amendment forbids even although the consummation of the wrong may not be within the powers possessed if the commission of the wrong itself is rendered possible or is efficiently aided by the state authority lodged in the wrongdoer. That is to say, the theory of the Amendment is that where an officer or other representative of a State in the exercise of the authority with which he is clothed, misuses the power possessed to do a wrong forbidden by the Amendment, inquiry concerning whether the state has authorized the wrong is irrelevant and the Federal judicial power is competent to afford redress for the wrong by dealing with the officer and the result of his exertion of power."

See also Screws v. United States, 325 U.S. 91, 109–111, 65 S.Ct. 1031, 89 L.Ed. 1495.

The decision in Barney v. City of New York, 193 U.S. 430, 439, 24 S.Ct. 502, 48 L.Ed. 737, upon which the defendants chiefly rely, is not controlling here. The expressions of opinion therein, which may seem at variance with what has been said above, have been expressly disapproved by the later decisions of the Supreme Court. Home Tel. & Tel. Co. v. City of Los Angeles, supra, 227 U.S. at page 294, 33 S.Ct. at page 317; Iowa-Des Moines Nat. Bank v. Bennett, 284

U.S. 239, 246–247, 52 S.Ct. 133, 76 L. Ed. 265; Snowden v. Hughes, 321 U.S. 1, 13, 64 S.Ct. 397, 88 L.Ed. 497.

The additional contention is made that the suit must be dismissed as a suit against the State of Virginia. It is said that the purpose and effect of the injunction is to control the use of state and city funds in the State Treasury and to compel their expenditure in the operation of the schools; and hence it is in essence a suit against the state by a citizen of a state contrary to the Eleventh Amendment. The contention is that the maintenance of such a suit would be contrary to the rule laid down in such cases as In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216; Mine Safety Appliances Co. v. Forrestal, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed. 140; O'Neill v. Early, 4 Cir., 208 F.2d 286, which, for the most part, involve state debts and money in the state treasury and hold that suits may not be maintained against state officers where the purpose is to establish and compel the payment of a money obligation due by the state.

The plaintiffs in the present suit, however, do not seek an injunction to require the State to pay out any money. The school funds to be used in the operation of the Norfolk schools have already been tentatively appropriated by the City Council subject to its further order and the plaintiffs merely ask that the City Council be restrained from exerting its power of control in such a manner as to violate the constitutional rights of the pupils of both races residing in the City of Norfolk. The applicable rule as laid down in In re State of New York, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057, was quoted by Judge Parker in O'Neill v. Early, supra, to the following effect (208 F.2d at page 288):

"Thus examined, the decided cases have fallen into two principal classes, mentioned in Pennoyer v. McConnaughy, 140 U.S. 1, 10, 11 S.Ct. 608 [699], 35 L.Ed. 363: 'The first class is where the suit is brought against the officers of the state, as representing the state's action and liability, thus making it, though not a party to the record, the real party against which the judgment will so operate as to compel it to specifically perform its contracts (citing cases). The other class is where a suit is brought against defendants who, claiming to act as officers of the state, and under the color of an unconstitutional statute, commit acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the state. Such suit * * * is not, within the meaning of the Eleventh Amendment, an action against the state.' The first class, in just reason, is not confined to cases where the suit will operate so as to compel the state specifically to perform its contracts, but extends to such as will require it to make pecuniary satisfaction for any liability. Smith v. Reeves, 178 U.S. 436, 439, 20 S.Ct. 919, 44 L.Ed. 1140 * * *"

See also Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, where it was held (337 U.S. at pages 697–702, 69 S.Ct. at pages 1465–1467) that the court may entertain a suit against a state officer for relief from actions in his official capacity —if the actions are illegal in the sense that they are not within his statutory powers, or, if the statutory powers cover the action but are constitutionally invalid or are exercised in an unconstitutional manner.

The present case falls within the class of cases where a public officer or agent makes use of his authority to perform an illegal act by invoking the command of an unconstitutional statute or seeks to carry out a valid statute in an unconstitutional manner. In such cases, it is held that his action is not the act of the state but the act of an individual, which may be restrained by the injunctive power of the Federal court. An analogous case is the decision of the Fifth Circuit in Cook v. Davis, 178 F.2d

595, where a Negro teacher in Georgia sought a declaratory judgment and an injunction against Atlanta school officials, prohibiting them from a salary discrimination aimed at teachers of the Negro race. It was there held that the suit was not, either in name or in effect, a suit against the State of Georgia, forbidden by the Eleventh Amendment.

Particular objection is made to paragraphs 3(b), (c), (d) and (g) of the injunction. Paragraphs 3(b), (c) and (d) prohibit the withholding of funds from the public schools appropriated by the budget ordinance of November 25, 1958, and from enforcing the restrictive provisions therein, which declare that the appropriation was made on a tentative basis and that no part should become available except upon resolution by the City Council, and reserve the right to change or cancel the unexpended part of the appropriation at any time during the fiscal year. Paragraph 3(g) prohibits the City Council from closing any school or any class in any school in the City of Norfolk in the exercise of the police power for more than two consecutive days without prior approval of the court. It is urged that these provisions would require the City Council to disburse the entire amount provided by the budget regardless of all circumstances or unexpected emergencies even though the City Council should be deprived of the assistance of State funds by later enactment of the General Assembly of Virginia in the exercise of its power to control the disposition of State funds. It is also contended that the restriction of the police power of the City Council to close the schools in case of emergency is an unwarranted interference with the activities of the Council and beyond the power of the Federal court.

██ We do not understand the preliminary injunction to be a final adjudication of the rights of the parties, but rather an order passed in an emergency to preserve the right of the plaintiffs to a public school education. But in order that there may be no misunderstanding on this point and no interference with the rights and duties of the City Council in the execution of its powers, the judgment of the District Court will be affirmed and the case remanded for further proceedings, with direction to the court to retain jurisdiction of the case with leave to any party at any time to move for modification of the terms of the injunction.

Affirmed and remanded.