**Ballington B. WILLS, Sr.**

v.

**A. E. SLAYTON, Jr., Superintendent of the Virginia State Penitentiary.**

**Civ. A. No. 73–561–R.**

United States District Court.
E. D. Virginia,
Richmond Division.

March 20, 1974.

Franklin P. Hall, Richmond, Va., for plaintiff.

Wilburn C. Dibling, Jr., Asst. Atty. Gen. of Va., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner, a state prisoner, seeks habeas corpus relief from detention pursuant to a judgment of the Circuit Court of Sussex County, Virginia, on May 28, 1971, wherein he was sentenced to serve a term of twenty years in the state penitentiary after having been convicted of murder in the second degree. Jurisdiction is attained pursuant to 28 U.S.C. § 2254. State court remedies have been exhausted. The case is presently before the Court on respondent's motion to dismiss. Since this motion is supported by material submitted which is outside the pleadings, the motion will be treated as one for summary judgment. Fed.R.Civ. P., Rule 12(c). Both parties have submitted memoranda on the issues and the Court has heard oral argument. Upon the material before it, the Court deems this matter ripe for disposition.[1]

---

1. Petitioner initially requested that the Court hold an evidentiary hearing to develop the facts upon which the petition is based. At oral argument, however, that motion was withdrawn and the case submitted on the state court records.

Petitioner has raised two sets of claims. First, he contends that he was denied effective assistance of counsel. He has assigned several bases for this claim, including failure of trial counsel to develop petitioner's alleged history of chronic inebriation, the refusal of counsel "to permit [petitioner] to testify at trial as to all the facts and circumstances leading up to the crime,[2] and failure of counsel to move for a change of venue. Second, he contends that his jury was improperly impaneled.

■ The Court is of the opinion that petitioner's claims of ineffective assistance of counsel are without merit. Having examined petitioner's state court records and considered the briefs of counsel and their argument at the bar, the Court finds that if errors in judgment by petitioner's trial counsel occurred, they were not such as would rise to the magnitude of constitutional deprivation. Root v. Cunningham, 344 F.2d 1 (4th Cir. 1965). Therefore, petitioner's claim on this issue must be dismissed.

■ Petitioner's claim of improper jury selection is in two parts. Initially he claims that selection of an impartial jury "in the rural county of Sussex where the petitioner and his deceased wife were known by many of the county citizens" was impossible. It is not unusual in rural counties that defendants are known by or have had some dealings with members of a jury panel. Were this alone sufficient to constitute a partial jury in the constitutional sense, it would be difficult to try any defendant in the rural county of his residence. Furthermore, in a case such as this, it is by no means clear that trial in a county where he was known might not work to a defendant's advantage.[3] Finally, there is no indication in petitioner's state court records that any juror who sat on the case was in fact biased against him in such a way as would make it more difficult for that juror to return a fair

and impartial verdict based on the evidence. See Transcript of May 28, 1971, Tr. 11–22; Transcript of May 19, 1972, Tr. 28–49. The claim on this issue shall be dismissed.

Finally, petitioner alleges constitutional error in that the trial judge did not comply with Va.Code Ann. § 19.1–210 (1960 rep.vol.) in impanelling petitioner's jury. That section stated:

A person whose opinions are such as to prevent his convicting anyone of an offense punishable with death shall not be allowed to serve as a juror on a trial for such offense.[4]

Petitioner's theory is that that process which is "due" in the federal constitutional sense is defined whenever the state puts legal limitations on the conduct of its own criminal proceedings. Although a practice might not have been required under the basic "fundamental fairness" criterion of the due process clause standing alone, the state decision to grant additional procedural rights in law, it is argued, carries with it a deprivation of due process should those procedures be omitted. The procedure is "due," then, irrespective of what the procedure is.

Support for argument of this nature can be found in Supreme Court dealings with federal administrative cases. In Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), petitioner challenged a denial by the Board of Immigration Appeals of his application for suspension of deportation, charging that the Board's judgment, required by regulation to be independent, was in fact influenced by the inclusion of the petitioner's name on a list of "unsavory characters" distributed by the Attorney General. Granting the propriety of a habeas corpus hearing, the Court stated (at 268, 74 S.Ct. at 504):

If successful (in habeas corpus), he may still fail to convince the Board or the Attorney General, in an exercise

---

2. Petitioner, who testified, premises this allegation on an alleged failure of counsel to interrogate him fully.

3. Indeed, if petitioner's counsel had moved for a change of venue, petitioner might now

have reason to complain that he had a right to trial by jurors of his community.

4. This section was repealed by Acts 1973, cc. 439, 544.

of their discretion, that he is entitled to suspension, but at least he will have been afforded that due process required by the regulations in such proceedings.

See also, Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).

One problem with this approach is that failure to adhere to promulgated rules and procedures is clearly illegal under federal administrative law without ever reaching the constitutional issue. See Vitarelli v. Seton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). Thus, even in the federal arena, whether the doctrine applied in cases like *Accardi* is one of administrative law or constitutional law remains ambiguous.

██ A more serious problem, however, is the unwillingness of the federal courts to read into the Federal Constitution the substantial federal presence in state affairs which would arise from a doctrine making virtually all violations of state law by state officials denials of federal due process. The Supreme Court's approach in this area has been that violation of state law is a matter for state courts, see Barney v. City of New York, 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737 (1904);[5] *cf.* Poulos v. New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953), unless the conduct would violate the federal constitution independently. Such an understanding in the area of criminal procedure is clear in Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960), which stated:

> Normally, the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented.

It is not a question of how clear state law is on a subject or whether that law has been statutorily or judicially enunciated. State law simply does not define the parameters of the Due Process Clause of the Federal Constitution. In deciding whether that clause has been violated by state action or inaction, federal courts must look to the "fundamental fairness" standard there embodied. To this the state can neither add nor detract. While states in setting up their own systems of criminal and administrative law may provide greater protections than those guaranteed by the Federal Constitution, federal due process is not thereby altered.

██ Petitioner has not argued that prevention of persons whose opinions are such as to prevent their convicting anyone of an offense punishable with death from sitting in a capital case is necessary to provide fundamental fairness to a defendant in such a case. He has not argued that such a procedure is independently an element of federal due process. The Court finds that such a procedure is not "necessary to an Anglo-American regime of ordered liberty," Duncan v. Louisiana, 391 U.S. 145, 150, n. 14, 88 S.Ct. 1444, 1448, 20 L.Ed.2d 491 (1968), and therefore is not such an independent element. Therefore, failure of the trial court to follow the procedure set out in Va.Code Ann. § 19.1–210 did not constitute a deprivation of federal due process, and relief on that ground will be denied.

██ Even if the failure of the trial court to exclude jurors opposed to capital punishment were constitutional error, this Court would have to find that such error was harmless beyond a reasonable doubt and not sufficient grounds for the relief which petitioner seeks. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Although tried for first degree murder,

5. The *Barney* case is better known for a somewhat broader holding that where a state remedy exists, no constitutional violation has occurred. In cases dealing with conduct specifically prohibited by the Constitution, this holding has been firmly repudiat- ed. See United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) at 25–26. See also Isseka, "Jurisdiction of the Lower Federal Courts to Enjoin Unauthorized Action of State Officials," 40 Harv.L. Rev. 969 (1927).

petitioner was convicted of murder in the second degree.[6] Even were the Court to assume that a jury unanimously unopposed to conviction in the trial of a capital offense would somehow have benefited the defendant, and the Court frankly has its doubts as to this,[7] it is unable to see how that benefit might manifest itself in any way other than in conviction of the included non-capital offense of which petitioner was in fact convicted.

For the reasons stated above, respondent's motion for summary judgment shall be granted and the petition dismissed.

An appropriate order shall issue.

6. It is to be noted that while the Court charged the jury that murder in the first degree was punishable by death or a term of imprisonment for life or not less than twenty years, the prosecuting attorney did not seek the death penalty but asked the jury to sentence defendant to "fifty years."

7. The assumption would have to be that the jurors, although not opposed to capital punishment, would view conviction of a crime carrying that sentence as requiring a somewhat greater measure of proof in light of its potential severe and irremedial consequences.