OZARK–BELL TELEPHONE CO. v. CITY OF SPRINGFIELD, MISSOURI, et al.

(Circuit Court, W. D. Missouri, S. D. October 11, 1905.)

No. 207.

1. INJUNCTION—JURISDICTION—PREVENTING MULTIPLICITY OF SUITS.

A bill by a telephone company to enjoin the enforcement of a city ordinance fixing a maximum rate of charge for telephone service, which alleges the invalidity of the ordinance, and shows that complainant has a large number of contracts with patrons, and that under the provisions of the ordinance it will be subject to prosecution and fine in the case of each one, states a case within equity jurisdiction to prevent a multiplicity of suits.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, §§ 18, 31.]

2. COURTS—FEDERAL JURISDICTION—SUIT ARISING UNDER CONSTITUTION.

A bill by a telephone company to enjoin the enforcement of a city ordinance fixing maximum rates of charge for telephone service, which alleges that the ordinance was passed in the exercise of power to fix rates conferred upon the city by an act of the Legislature, and that if enforced complainant cannot make any net earnings whatever on its large capital invested in the business, nor sufficient to pay its necessary expenses, and will be deprived of its property without due process of law, states a cause of action arising under the fourteenth amendment to the Constitution of the United States, of which a federal court has jurisdiction, although it is further averred, as a legal conclusion, that the ordinance is also in violation of the state Constitution, prohibiting the impairment of the freedom of contract.

[Ed. Notes.—Jurisdiction of suits involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.]

3. INJUNCTION—RESTRAINING ENFORCEMENT OF ORDINANCE—SUFFICIENCY OF BILL.

Complainant in a suit to enjoin the enforcement of an ordinance fixing telephone rates, on the ground that the rates fixed are unreasonable, and would operate to deprive it of its property without due process of law, is not required to allege or prove that its own rates, fixed by its contracts, are reasonable, nor the cost of service and amount received with respect to each particular subscriber; but the bill is sufficient if it shows the aggregate cost of operating and maintaining its plant, and that the ordinance so reduces rates that they will not yield a sufficient sum to pay such cost.

In Equity. On demurrer to bill.

Sebree & Farrington and Gleed, Ware & Gleed (J. W. Gleed and G. M. Sebree, of counsel), for complainant.

A. P. Tatlow, City Atty., T. A. Sherwood, and Barber & McDavid (H. C. Young & F. M. McDavid, of counsel), for defendants.

MARSHALL, District Judge. The complainant, a telephone company, filed its bill to restrain the city of Springfield, Mo., and its officers from the threatened enforcement of an ordinance enacted by the city council and approved by the mayor, which prescribes maximum rates for the use of telephones within the city of Springfield, and provides that any individual, company, or corporation who shall charge, collect, or receive any sum in excess of the rates so fixed shall be guilty of a misdemeanor, and, upon conviction, shall be fined in a sum not less than $50 nor more than $100 for each and every offense. In the bill is averred the incorporation of the complainant; that by ordinance the city council of Springfield duly authorized it to construct, maintain, and operate its telephone lines and exchanges in that city, and its acceptance of the rights so conferred; that, by virtue of said ordinance, it has constructed telephone lines and exchanges in the city, has leased other lines, and has entered on its corporate business; that it is supplying telephone service in the city to 2,050 subscribers, at stated rates fixed by it, which are higher than the maximum rates fixed by the ordinance complained of, but are alleged to be reasonable; that the necessary expense of furnishing telephone service to its Springfield subscribers amounts to $30,000 per annum, and of maintaining in proper condition its plant to $20,000 per annum; that the necessary cost of rent, office buildings, insurance, and taxes amounts to $5,000 per annum, aggregating a necessary annual expense for operation and maintenance of its Springfield system of $55,000; that, in addition to this, the complainant pays an annual rental of $3,000 on its leased lines; that the telephone property owned by complainant in the city has cost and is worth $175,000, and the leased property is of the value of $50,000, all of which is necessary for the transaction of the business affected by the ordinance complained of; that the gross revenue now received, and which will be received under the rates fixed by the complainant, as compensation for telephone service to its Springfield subscribers, does not exceed $54,000 per annum; that complainant's net income from all the business not affected by said ordinance does not exceed $3,000 per annum; that section 5835, art. 4, c. 91, of the Revised Statutes of 1899, of Missouri, as amended in 1903, confers on cities of the third class, in which class Springfield is included, the power to fix reasonable maximum rates and charges for the rental and use of telephones and telephone service within such cities, and, under the authority of that section, the city council of Springfield, on September 5, 1905, passed the ordinance in question, which is in the bill set out in full; that the ordinance rates, if enforced, would greatly decrease the complainant's income, and force it to operate its property at a loss, and deny it any profit whatsoever on its investment; that the ordinance thereby violates the fourteenth amendment to the Constitution of the United States, in that it takes the complainant's property without due process of law, and denies it the equal protection of the law; that the ordinance "is in contravention of the fourteenth amendment of the Constitution of the United States and of section 4, art. 2, of the Constitution of the state of Missouri, in that it impairs your orator's freedom of contract, in this: that under

said ordinance your orator is deprived of its right to rent its instruments and furnish service at less than the rates named in said ordinance for a limited time, and in that it prevents your orator from renting or contracting for the use of its instruments or the furnishing of its service for a longer period than three months." It is further averred that, unless restrained from so doing by this court, the city of Springfield and its officers, the defendants herein, will and have threatened to require the complainant to reduce its rates to an amount not in excess of the ordinance rates, and are threatening to arrest and prosecute the complainant, its officers and employés, unless said rates be so reduced; that complainant's subscribers are numerous, and the charging, collection, or receipt from each of its subscribers of rates in excess of the ordinance rates constitutes a separate offense, each of which is punishable by a fine under said ordinance; that unless restrained complainant will be subjected to numerous suits and excessive penalties, and will also be subjected to suits of a civil nature by its subscribers and parties desiring telephone service at the rates prescribed by the ordinance, and that such suits have been threatened; and that, until such ordinance be adjudicated, citizens of the city will refuse to make contracts at complainant's rates, and complainant will suffer irreparable damage. The prayer of the bill is that the maximum rate ordinance be decreed unconstitutional and void, and that the defendants be enjoined from enforcing it. This bill was duly verified.

To the bill the defendants have filed a joint demurrer, the grounds of which may be summarized as follows: · (1) The complainant shows no right to relief in equity, because it has a plain, speedy, and adequate remedy at law. (2) The court has no jurisdiction, as there is no diversity of citizenship of the parties, and the suit does not actually arise under the Constitution of the United States. (3) The bill states no facts in issuable form showing that the complainant's rates are reasonable, or how it would be injured if compelled to charge no more than the ordinance rates. These questions will be considered in the order stated.

1. To preclude relief in equity, the remedy at law must be as efficient as that to be afforded by a court of equity. The complainant would be liable to a maximum fine of $100 for each contract made at a rate higher than that prescribed by the ordinance. If it proceeded to make new contracts with each of its 2,050 subscribers, it would subject itself to the danger of an equal number of prosecutions, and be liable to fines aggregating over $200,000—almost the full value of its property, including that leased. The validity of the ordinance could, it is true, be contested in such prosecutions, but at the risk of ruin if the contest be unsuccessful. Besides this, the complainant would in all probability be involved in a multiplicity of actions with its subscribers, demanding service at the ordinance rates. The jurisdiction of a court of equity to settle the controversy in one suit rests on the fact that a multiplicity of actions will thereby be avoided. It is so settled by the authorities as to render a detailed discussion of them unnecessary. City of Hutchinson et al. v. Beckham et al., 118 Fed. 399, 55 C. C. A. 333; Smyth v. Ames, 169 U. S. 466,

517, 18 Sup. Ct. 418, 42 L. Ed. 819; Detroit v. Detroit Citizens' Street Railway Company, 184 U. S. 368–379, 22 Sup. Ct. 410, 46 L. Ed. 592.

2. If the court has jurisdiction of the suit, it results from the fact that the cause of action arises under the Constitution of the United States, within the meaning of section 1 of the Judiciary Act of March 3, 1887, c. 359, 24 Stat. 505 [U. S. Comp. St. 1901, p. 752]; that is, it must require for its proper determination a construction of some provision of the Constitution as applied to the facts pleaded. The contention of the defendants is that the bill shows that the constitutional right asserted is only potentially, not actually, involved in a decision of the cause; and further, that the fourteenth amendment to the Constitution is directed to state action, not to the action of a municipal body unauthorized by any act of the state. The pleading is not open to the criticism made. The case presented by the complainant is that of an acquisition of property and franchises with the consent of the state and municipality; a statute of the state empowering the city to fix reasonable rates, and an ordinance of the city so fixing the rates as to deny the complainant the right to make any profit on its large investment. It is not a question as to what is a reasonable return on such an investment, but whether all profit may be denied. That such municipal action deprives the complainant of its property without due process of law, and denies to it the equal protection of the law, within the fourteenth amendment of the Constitution of the United States, seems well settled. Since the city was empowered by the Legislature of the state to act, the action taken was the action of the state through one of its agencies.

But it is said that the complainant alleges that the ordinance challenged is in contravention of section 4, art. 2, of the Constitution of Missouri, in that it impairs its freedom of contract. It may be admitted that, if the only claim made is that the city has proceeded in a way forbidden by the Constitution of the state of Missouri, and for that reason the rights guarantied by the fourteenth amendment of the Constitution of the United States have been infringed, there is no jurisdiction. The whole question would then turn on a construction of the Constitution of the state of Missouri, and should be left to the decision of its courts. But the bare averment that the ordinance contravenes the Constitution of Missouri states no issuable fact. It is a mere legal conclusion. Nor does the bill present a case of an unlawful interference with its right to contract. The conclusion of the pleader in this respect must be treated as surplusage. The suggestion made on the argument that the state had authorized the city to prescribe reasonable rates, and that, when unreasonable rates were fixed, the action of the city was unauthorized, and cannot be imputed to the state, is answered by the Supreme Court of the United States in Barney v. City of New York, 193 U. S. 430, 24 Sup. Ct. 502, 48 L. Ed. 737, in which case, in discussing Reagan v. Farmers' Loan & Trust Company, 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, it said, at page 440 of 193 U. S., at page 505 of 24 Sup. Ct., and 48 L. Ed. 737:

"And as the establishment of rates by the commission was the establishment of rates by the state itself, and the determination of what was reasonable was left to the discretion of the commission, their action could not be regarded as unauthorized, even though they may have exercised the discretion unfairly."

3. It is not necessary that the complainant should state any facts to show that the rates fixed by it are reasonable. The court is not called on to express any opinion as to those rates. It is sufficient if the facts that show the ordinance rates to be unreasonable are pleaded, and those facts I think appear with sufficient certainty. The complainant was not called on to allege the cost of the service rendered to any particular subscriber. From the nature of the business, the cost to the complainant was in furnishing facilities for the use of its group of subscribers, and that cost could not be estimated by the frequency with which any special subscriber availed himself of the facilities extended. The only way the question of cost and compensation could be presented was by aggregates, and that the complainant has done. The injury to the complainant resulting from an enforcement of the ordinance rates is sufficiently shown by the averments that they are less than the rates theretofore enforced, and will not yield a sufficient sum to pay the cost of operation and maintenance; the sum yielded by the original rates being barely sufficient for that purpose.

The demurrer must be overruled, and as the bill is sworn to positively, and the only opposition to the injunction sought is by way of demurrer, the temporary injunction will issue.