SAN FRANCISCO GAS & ELECTRIC CO. v. CITY AND COUNTY OF SAN FRANCISCO et al.

(Circuit Court, N. D. California. August 7, 1911.)

No. 14,742.

1. COURTS (§ 282*)—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

A suit by a gas company to enjoin enforcement of a municipal ordinance fixing the price of gas, passed in the exercise of powers conferred by the state Constitution, as being confiscatory and depriving complainant of its property without due process of law, in violation of the fourteenth constitutional amendment, presents a federal question under such provision which gives a federal court jurisdiction, notwithstanding the fact that the state Constitution contains a like provision, and on the facts alleged in the bill the ordinance would be invalid thereunder.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–824; Dec. Dig. § 282.*

Jurisdiction in cases involving federal question, see notes to Bailey v. Mosler, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Mining Co., 35 C. C. A. 7; Earnhart v. Switzler, 105 C. C. A. 262.]

2. CONSTITUTIONAL LAW (§ 251*)—PROHIBITION OF FEDERAL CONSTITUTION—LAWS OF STATE—"ACT OF THE STATE."

Where a state has conferred power on some one of its agencies to perform a certain function involving the exercise of discretion, the performance of such function within that grant, although in a manner to render it obnoxious to the laws of the state, is none the less the act of the state within the contemplation of the constitutional prohibition against deprivation of life, liberty, or property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 251.*]

In Equity. Suit by the San Francisco Gas & Electric Company against the City and County of San Francisco and others. On motion by defendants to dismiss for want of jurisdiction. Motion denied.

See, also, 164 Fed. 884.

Percy V. Long, City Atty., and Thomas E. Haven, Asst. City Atty., for the motion.

Garret W. McEnerney, opposed.

VAN FLEET, District Judge. A motion was heretofore made by the respondents to dismiss this case (with certain others of like character) for want of jurisdiction, in that the facts stated in the bill do not really and substantially involve a controversy properly cognizable in this court under the judiciary act. The motion was denied at the hearing, the court being of opinion that it was not well founded, for the reasons then briefly stated orally.

Since the ruling the attention of the court has been called to the fact that the question presented has excited more than local interest; and, the views of the court not being available as an authoritative reference, it is deemed proper to accede to the suggestion that the reasons actuating it be expressed in writing.

There is but one substantive question involved, and the basis upon which it rests may be briefly stated:

[1] The bill seeks to enjoin the enforcement of an ordinance of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the board of supervisors of the city and county of San Francisco fixing the annual gas and lighting rates in the municipality, upon the ground, first, that the rates provided by the ordinance are inadequate to afford a due return to complainant, a public service corporation furnishing light to the city, and will operate to deprive it of its property without due process of law, in violation of the fourteenth amendment to the Constitution of the United States; and, secondly, upon the further ground that the ordinance is in form in violation of the express provisions of the charter of the city under which it was adopted, in that it embraces more than one subject, and is for that reason void and of no effect. The fourteenth amendment to the Constitution of the United States provides that no state shall "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws"; and the settled construction of this provision is that it contemplates action by the state, through some one of its departments, functionaries, or agencies, having the effect prohibited, and not the act of a private individual or other agency acting without state authority. The Constitution of the state, by section 19, art. 11, vests in municipalities the power to establish, maintain, and regulate gas and lighting rates therein under the conditions alleged in the bill, and it was by virtue of this provision that the ordinance involved was passed; and it is conceded that a municipality, exercising the authority granted by that provision, is acting as an agency of the state, and that a valid ordinance adopted under such grant would constitute state action within the contemplation of the fourteenth amendment to the Constitution of the United States. But the Constitution of the state, in section 13, art. 1, also provides in almost the precise terms of the fourteenth amendment that "no person shall be deprived of life, liberty or property without due process of law"; and this latter provision is the underlying foundation which gives rise to the proposition involved in the motion.

Not questioning the jurisdiction in this court of a case arising under the Constitution or laws of the United States, the contention is that the bill does not disclose such a case, for the reason that the facts do not show "state action." This is predicated upon the argument that, conceding that the state has vested in a tribunal or functionary full and plenary power, as here, to do a certain thing, an act done under such authority is not the act of the state in the sense here involved, unless it be so done as to be legally unassailable; that is, so done that, if passed in review by the highest judicial tribunal of the state, it would necessarily be held valid in form and substance; that anything less than this is not state action. In other words, to apply the principle to the concrete case presented by the bill, that the above provision of the Constitution of the state vesting in municipalities the power to fix gas rates must be read in conjunction with the provision of the same instrument that no person shall be deprived of his property without due process of law; and if an ordinance adopted under the supposed authority of the first is found to be obnoxious to the second by fixing rates so unreasonably low as to be confiscatory

of the property of those affected, or is invalid for any other reason under the Constitution or laws of the state, then the adoption of such ordinance cannot be said to have been had under the authority of the state in a sense to bring it within the prohibition of the fourteenth amendment; that as the present bill by its averments, when read in the light of these provisions, discloses upon its face that the ordinance in question would not stand this test, it pleads the complainant out of court by showing that the controversy is not one arising under the Constitution of the United States, but involves alone the Constitution and laws of the state, jurisdiction of which rests solely in the courts of the state.

This contention, while not new, is nevertheless somewhat startling in view of the history of this character of litigation in the federal courts, wherefrom it has been very generally assumed that the question had been definitely set at rest. It is based entirely upon the supposed authority of the recent decision of the Circuit Court of Appeals for this circuit in the case of Seattle Electric Co. v. Seattle R. & S. Ry. Co. (C. C. A.) 185 Fed. 365, and the cases referred to therein. It is not contended that the facts of that case in any way required a decision going to the extent claimed by respondents, and, in fact, as will be seen, no such question was involved; but it is claimed that the language of the court lays down a principle broad enough to support the contention here made, and in this respect respondents are not without support. That there is some general language in that opinion which, when separated from its context and dissociated from its facts, lends color to the construction put upon it by respondents, cannot be denied, language which has induced a similar view, not only by able counsel seeking, through a petition for rehearing, its modification, but by leading law journals. 23 Green Bag, p. 153; 4 Lawyer and Banker, p. 132.

With the utmost disposition to observe any authoritative declaration of the Circuit Court of Appeals, the ruling denying the motion was made upon the assumption, as stated, that the question presented had been so firmly settled against respondents' contention by numerous decisions of the federal courts, including cases decided by the Supreme Court, prior to the ruling in the Seattle case, that the latter could not reasonably have ascribed to it the purpose and effect attributed to it by respondents; and a further examination of the question for the purposes of this opinion has tended only to confirm that view. Very certainly the idea should not be readily indulged that the Circuit Court of Appeals in that case intended to "take a new departure," as suggested by respondents, if that "departure" is found to be directly at variance with principles previously announced by the Supreme Court; and yet, if respondents' construction of that decision is correct, I think it can be confidently said that such is precisely the situation that confronts us. As a means, therefore, of throwing light upon whether the Court of Appeals intended any such result as that sought to be ascribed to it, it will be well before a more particular discussion of their opinion to ascertain just what the state of the law was on the question presented at the time that decision was rendered. For this

purpose, it is not deemed necessary to refer to the large number of cases of a similar character in which jurisdiction has been asserted and exercised by the federal courts without challenge; but it will be sufficient to call attention to some of those arising either under the same provision of the Constitution or the cognate one prohibiting the states from passing any act impairing the obligation of contracts, wherein the same objection has been interposed and directly adjudicated.

The case of Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, is strictly analogous to the present. There the Constitution of Illinois created a state board of equalization, requiring it in terms to carry out the provisions of the state Constitution, "so that every person shall pay a tax in proportion to the value of his, her or its property." Certain railroad companies brought proceedings in the United States Circuit Court to enjoin the collection of taxes claimed to have been improperly equalized by this board, and based upon an assessment alleged to violate the plaintiffs' rights under the fourteenth amendment. The record shows (52 L. Ed. p. 82 et seq.) that the point was there made in the briefs that no federal question was presented, since the action of the state board was contrary to the Constitution and laws of the state, and it would be presumed that the state courts would give full relief; and a dismissal was sought upon that ground. The court, through Mr. Justice Peckham, upheld the jurisdiction of the court and affirmed the judgment, holding that the action of the board of equalization, being within its grant of power, was, although illegal, the action of the state. It is there said:

"The most important function of the board, that of equalizing assessments, in order to carry out the provisions of the Constitution of the state in levying a tax by valuation, 'so that every person shall pay a tax in proportion to the value of his, her or its property,' was, in this instance, omitted and ignored, while the board was making an assessment which it had jurisdiction to make under the laws of the state. This action resulted in an illegal discrimination which, under these facts, was the action of the state through the board. Barney v. City of New York, 193 U. S. 430 [24 Sup. Ct. 502, 48 L. Ed. 737], holds that, where the act complained of was forbidden by the state Legislature, it could not be said to be the act of the state. Such is not the case here."

The force of the majority opinion in this case is accentuated by the dissenting opinion of Mr. Justice Holmes, concurred in by Mr. Justice Moody, taking the view that the case raised no federal question, since the action of the board complained of confessedly violated the state Constitution, and that, therefore, redress should have been sought first in the state courts.

In Michigan Central R. Co. v. Powers, 201 U. S. 245, 26 Sup. Ct. 459, 50 L. Ed. 744, the bill was one to restrain the enforcement of the provisions of a state law for the assessment and collection of taxes on railroad and other property. The court while holding that the state legislation did not conflict with the fourteenth amendment, upheld the jurisdiction of the federal courts in the following language:

"The unconstitutionality of a statute may depend upon its conflict with the Constitution of the state or with that of the United Sates. If conflict with the state Constitution is the *sole ground* of attack, the Supreme Court of the

state is the final authority (Merchants' Bank v. Pennsylvania, 167 U. S. 461 [17 Sup. Ct. 829, 42 L. Ed. 236], and cases cited in the opinion), while in the other case the ultimate decision rests with this court. The validity of this act has not been directly presented to or determined by the state court, but the first attack by the parties interested is made in the federal court and by this suit, and conflict *with both Constitutions* is alleged. Undoubtedly a federal court has the jurisdiction, and, when the question is properly presented, it may often become its duty to pass upon an alleged conflict between a statute and the state Constitution, even before the question has been considered by the state tribunals. All objections to the validity of the act, whether springing out of the state or of the federal Constitution, may be presented in a single suit, and call for consideration and determination." (Italics volunteered.)

In Des Moines City Ry. Co. v. City of Des Moines (C. C.) 151 Fed. 854, the same question was squarely presented, the action being one, as here, without diversity of citizenship, to enjoin the enforcement of a municipal ordinance claimed to deprive complainant of its property without due process of law, and to impair the obligation of an existing contract. The jurisdiction was attacked upon the same grounds here urged, and in response thereto it is said:

"Finally, it is urged by counsel for the city that the case can be decided under the Iowa Constitution, and, therefore, there is no federal question. That is the rule as to taking a writ of error to the Supreme Court; but it is not the test as to jurisdiction of this court. The contention of the city is because of article 1, § 21, of the Iowa Constitution, 'No law impairing the obligation of a contract shall ever be passed,' and those other provisions much like recitals to be found in the fourteenth amendment. Thirty-two of the states have a similar provision, and yet time and again from those states have cases arisen and been carried through the Supreme Court without a diversity of citizenship, on federal questions from states, wherein were involved the contract clause, and of taking property without due process of law. It must never be forgotten that the Constitution of the United States according to its own recitals in article 6 is as follows: 'This Constitution and the laws of the United States which shall be made in pursuance thereof * * * shall be the supreme law of the land.' And, when it is not so, this government will be at an end, and we will again have a confederation. In most cases wherein the United States Circuit Courts take jurisdiction such courts and the state courts have concurrent jurisdiction. But, if the contention of the defendant's counsel is correct, then in 32 states of this Union United States courts are ousted of jurisdiction by the action of those states, while in the remaining states the jurisdiction remains."

While that case was reversed by the Supreme Court (214 U. S. 179, 29 Sup. Ct. 553, 53 L. Ed. 958) upon another ground, the question of jurisdiction asserted in the lower court was left untouched. In Manigault v. S. M. Ward Co. (C. C.) 123 Fed. 707, affirmed 199 U. S. 473, 26 Sup. Ct. 127, 50 L. Ed. 274, it was alleged that a state statute authorizing the defendants to construct a certain dam violated both the state and the federal Constitutions in several particulars, and the provisions of each of those instruments alleged to have been violated were set up in the bill. In passing upon the question of jurisdiction the court said:

"The first question which arises in this case—as, indeed, in all cases in federal courts—is as to the jurisdiction of the court. The action is between citizens of the same state. The only ground of jurisdiction is that the case involves questions arising under the construction or application of the Constitution of the United States. Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257.

For the federal questions we must examine the allegations of the bill alone. The federal question must appear upon its face. Tennessee v. Union & P. Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511. The bill sets up violations of the Constitution of the United States, and also violations of the Constitution of South Carolina. Unless the federal question thus set up appears to be specious (Illinois Central v. Chicago, 176 U. S. 656, 20 Sup. Ct. 509, 44 L. Ed. 622), the court must take jurisdiction. The fact that a question made in good faith is presented to the court for its decision gives it jurisdiction of the case. Illinois Central v. Adams, 180 U. S. 28, 21 Sup. Ct. 251, 45 L. Ed. 410. And, there being a federal question in the case, the court can go on and decide every other question, whether federal or not. The ultimate question upon which the case may turn, whether of federal, local, or general law, is a matter which in no wise affects the jurisdiction of the case. Mayor v. Cooper, 6 Wall. 247, 18 L. Ed. 851; Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; St. Paul, etc., Ry. Co. v. St. Paul & N. P. R. Co., 68 Fed. 10, 15 C. C. A. 167."

In Ozark-Bell Telephone Co. v. City of Springfield (C. C.) 140 Fed. 666, the bill was to enjoin the enforcement of an ordinance regulating telephone rates. The court, holding that the municipal ordinance constituted state action, said:

"But it is said that the complainant alleges that the ordinance challenged is in contravention of section 4, art. 2, of the Constitution of Missouri, in that it impairs its freedom of contract. It may be admitted that, if the only claim made is that the city has proceeded in a way forbidden by the Constitution of the state of Missouri, and for that reason the rights guaranteed by the fourteenth amendment of the Constitution of the United States have been infringed, there is no jurisdiction. The whole question would then turn on a construction of the Constitution of the state of Missouri, and should be left to the decision of its courts. But the bare averment that the ordinance contravenes the Constitution of Missouri states no issuable fact. It is a mere legal conclusion. Nor does the bill present a case of an unlawful interference with its right to contract. The conclusion of the pleader in this respect must be treated as surplusage. The suggestion made on the argument that the state had authorized the city to prescribe reasonable rates, and that, when unreasonable rates were fixed, the action of the city was unauthorized, and cannot be imputed to the state, is answered by the Supreme Court of the United States in Barney v. City of New York, 193 U. S. 430, 24 Sup. Ct. 502, 48 L. Ed. 737, in which case, in discussing Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, it is said at page 440 of 193 U. S., at page 505 of 24 Sup. Ct., and 48 L. Ed. 737: 'And as the establishment of rates by the commission was the establishment of rates by the state itself, and the determination of what was reasonable was left to the discretion of the commission, their action could not be regarded as unauthorized, *even though they may have exercised the discretion unfairly.*" (Italics volunteered.)

It will be observed that this last case meets the very argument by which respondents seek to sustain their contention here; that is, that the rates authorized by the Constitution of the state are "reasonable rates," and, as those prescribed by the ordinance are not such, they were in excess of that power, and cannot therefore be regarded as the act of the state. It is shown by the quotation from Barney v. City of New York, there cited, that that argument is without merit; and it is further said in the Barney Case:

"Similarly in Pacific Gas Imp. Co. v. Ellert [C. C.] 64 Fed. 421, where a public board was given power to improve streets, and proceeded in excess of its powers but not in violation of them, its action was regarded by Mr. Justice McKenna, then circuit judge, as state action."

In City of Louisville v. Cumberland T. & T. Co., 155 Fed. 725, 84 C. C. A. 151, Mr. Justice Lurton, then circuit Judge, speaking for the Circuit Court of Appeals for the Sixth Circuit, announces the same doctrine in this terse language:

"If the state has conferred authority upon the municipality to establish and enforce reasonable rates for telephone service, then the establishment of rates under this power would be the establishment of rates by the state itself."

Lastly, a precisely similar argument is made in Citizens' St. Ry. Co. v. City St. Ry. Co. (C. C.) 56 Fed. 746, and is thus met:

"It is contended that the constitutional guaranty which prohibits a state from passing any law impairing the obligation of contracts must be read into the state statute, and, thus read, the statute would not confer any authority on the city to make the contract and enact the ordinance in question, and therefore no federal question would be involved. If such concession were granted, it is argued that no law of the state, however clearly it might impair the obligation of contracts, would present a federal question, because the bane and antidote would go together. If the constitutional prohibition was read into the state law, the federal question would still remain. The federal question in all such cases is, Does the statute of the state, or the grant made a municipality thereunder, when fairly construed, and treating it as otherwise valid, present a case falling within the prohibition of the constitutional guaranty in question?"

This case was affirmed by the Circuit Court of Appeals in (C. C.) 64 Fed. 647, and by the Supreme Court in 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114; and in both courts the question of jurisdiction was adverted to and sustained.

[2] These authorities, to my mind, fully sustain the views of this court as expressed at the argument: That, where it appears from the averments of the bill that the act complained of violates the Constitution of the United States, this court has jurisdiction of the controversy, notwithstanding it may also appear that the act contravenes the Constitution or laws of the state, and is for that reason invalid, and that, where a state has conferred power upon some one of its agencies to perform a certain function involving the exercise of discretionary power, the performance of such function within that grant, although in a manner to render it obnoxious to the laws of the state, is none the less the act of the state within the contemplation of the constitutional guaranty here invoked; that such an instance is in all material respects analogous to the one where a state has conferred certain jurisdiction upon its courts, where acting within the limits of that jurisdiction no one may question that the decision of a state court is to be regarded as much the act of the state, whose majesty it represents, when it decides wrong, as when it decides right, since it is still, in either event, acting under the cloak of state authority.

Are these views in any respect at variance with the ruling in the Seattle case? In more critically examining that case it will be well to keep in mind some pertinent utterances by two distinguished jurists, bearing upon the danger, in seeking the meaning of a court, of seizing upon an isolated expression in an opinion and making one's deductions therefrom without regard to the subject-matter intended to be

dealt with.    Says Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257:

"It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used.  *  *  *  The reason of this maxim is obvious.  The question actually before the court is investigated with care and considered in its full extent.  Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

And Lord Manners in Revell v. Hussey, 2 Ball & B. 286, states the same rule in this way:

"It is always unsatisfactory to abstract altogether the reasoning of the court in any reported case from the facts to which this reasoning is meant to apply.  This has a tendency to misrepresent one judge and mislead another."

The facts of the Seattle case were these: The complainant, the Seattle Electric Company, had obtained a franchise from the municipality to operate a street railway. The ordinance granting the franchise provided that it should not be deemed exclusive, and the right was reserved to the city to grant to any other person or persons, or to itself exercise the right and privilege to construct railway lines along the streets over which the franchise was granted. The city subsequently granted the defendant a franchise over the same streets and the ordinance granting this franchise provided that, before any railroad tracks should be laid, all injuries and damages to be occasioned thereby to any other parties should be ascertained and settled according to law. The bill alleged that, if the defendant were permitted to exercise this later franchise, it would greatly depreciate the value of the complainant's property; that the ordinance was in violation of the terms of the franchise owned and used by plaintiff, and had been obtained in fraud of its rights; that it was "granted illegally and without right by the city of Seattle"; that by its terms "the rights of the plaintiff would be taken from it without due process of law and in contravention of the Constitution and laws of the United States"; and that the ordinance was granted "without authority of law," and was "null, void, and without force and effect." There was no averment in the bill that the objectionable ordinance had been passed under state authority, but to the contrary, as stated above, it was expressly alleged that the second franchise had "been granted illegally, without right, by the city of Seattle, and that said alleged ordinance is without authority in law, and is null, void, and of no force and effect." The relief sought was an injunction to prevent the carrying out of the second ordinance. An injunction having been granted by the Circuit Court, an appeal was taken, principally upon the ground that the bill did not state a case within the jurisdiction of that court. In disposing of the question of jurisdiction, there being no diversity of citizenship, the Court of Appeals observes that, in order to give jurisdiction to the federal courts, the claim that a federal question is involved must be real and substantial, and not merely assertive or colorable. Pointing out that the claim there asserted was based upon

a supposed conflict between the municipal ordinance and the four-teenth amendment, the court says with reference to the provisions of that amendment:

"These provisions have reference to state action exclusively, and not to any action of a private individual or corporation. It is the state that is prohibited from abridging the privileges or immunities of citizens of the United States, and from depriving any person of life, liberty, or property without due process of law. The state may act through different agencies, through its legislative, executive, or judicial authority. Virginia v. Rives, 100 U. S. 313, 316, 25 L. Ed. 667; Civil Rights Cases, 109 U. S. 3, 11, 3 Sup. Ct. 18, 27 L. Ed. 835. A municipal corporation may be such an agency. Its power is generally that of a political subdivision of the state created by virtue of the power of the state acting through its legislative department. Worcester v. Street Ry. Co., 196 U. S. 539, 548, 25 Sup. Ct. 327, 49 L. Ed. 591; St. Paul Gaslight Co. v. St. Paul, 181 U. S. 142, 148, 21 Sup. Ct. 575, 45 L. Ed. 788. A municipal ordinance passed pursuant to the authority of the state which abridges the privileges or immunities of a citizen or deprives a person of property without due process of law may be therefore an act of the state prohibited by the Constitution. But the ordinance to come within the prohibition of the amendment must, by implication at least, express the will of the state. It must be the act of the state. City of Louisville v. Cumberland Telephone & Telegraph Co., 155 Fed. 725, 729, 84 C. C. A. 151. With these fundamental principles before us, let us make further inquiries concerning the ordinance involved in this case."

The ordinance under which the complainant acquired its franchise is then considered, and the court holds that by its very terms that franchise was in no way exclusive; and that, as the ordinance under which the respondent in the case acquired its franchise required it to make full compensation for any damages caused by the location of its railway before any track should be laid, the claim that the complainant had been or would be deprived of its property without due process of law was wholly unsubstantial and colorable, and in no way disclosed a violation of the Constitution of the United States; and hence that the Circuit Court was without jurisdiction. This conclusion, it will be observed, virtually disposed of the whole case; but the court, evidently to emphasize that conclusion, then proceeds as follows, and this is the feature of the opinion which has inspired the present motion:

"But there is a further and, as we believe, a conclusive, objection to the claim of right on the part of the complainant to invoke the jurisdiction of the Circuit Court on constitutional grounds. It seems to us that in no aspect of the grant to the defendant is there a real and substantial dispute or controversy dependent upon the application of provisions of the federal Constitution. If it should be conceded that in some view of the ordinance and defendant's action under color of its provisions there would be a taking of complainant's property without due process of law, still it would not follow that the Circuit Court had jurisdiction of the case, unless the ordinance in that aspect would be the law of the state. The supreme law of the state is the Constitution of the state; and that document provides, in article 1, § 13, as does the fourteenth amendment to the Constitution of the United States, that 'no person shall be deprived of life, liberty or property without due process of law.' Under this provision of the state Constitution, the ordinance would be as invalid as under the federal Constitution. It would be with respect to the former, as the complainant charges in its complaint with respect to the latter, 'without authority in law, null and void, and of no force and effect.' The presumption is that the courts of Washington will not deny to any of its citizens or corporations the equal protection of

its Constitution. If, however, it should turn out that we are mistaken in this respect, the complainant will have his remedy in an appeal from the highest court of the state to the Supreme Court of the United States."

Certain authorities are then referred to by the court which will be noticed later.

While the language employed is somewhat broad and sweeping, when the facts to which it was addressed are considered, it will, I think, be at once apparent that the principles there stated, while perfectly applicable to the case then under consideration, have no application to a case like the one at bar. The court was there dealing with a case in which the municipal ordinance was, as to any possible illegal aspect it might have, not only unauthorized by the state, but was affirmatively alleged to have been passed "without right" and "without authority in law"—allegations which must be taken to mean that it was without sanction under the laws of the state. It was clearly, therefore, a case in which the state was in no manner attempting to deprive the complainant of its constitutional rights as guaranteed by the fourteenth amendment, but simply one wherein in legal effect a municipality was alleged to be proceeding in violation of complainant's rights under the Constitution and laws of the state. It was accordingly held that the averment that the enforcement of the ordinance would deprive complainant of its property, contrary to the fourteenth amendment, was purely colorable; that the ordinance, if having the effect alleged, was in contravention of the state Constitution, which itself prohibited the taking of property without due process of law, and that it would be presumed that the state courts would protect complainant's rights thereunder; that, if the highest court of the state should enforce the ordinance, then only could it be said to "have received the sanction of the state, and in effect become the act of the state itself," in which event, should it operate unjustly, complainant would have its remedy by writ of error to the Supreme Court of the United States.

It is obvious from these considerations that the language of the court was intended to apply only to an act done or an ordinance passed without color of authority from the state, and as to which there could be no sanction attributed to the state as to any illegal effect until so declared by its courts. That this is so is made clear by the cases cited and relied upon in the opinion to support its conclusions. The first quotation is from 5 Ency. U. S. Sup. Ct. Rep. 545. That the language there quoted has reference only to cases in which there is both lack of authority from, and express prohibition by, the state of the act complained of, is made apparent by reading the portion of the paragraph immediately preceding that quoted by the court, which is as follows:

"When a subordinate officer or agency of the state in violati⁀⁀ of state law undertakes to do that which is not only unauthorized, but wι⁀⁀⁀ ; forbidden by the state law, such action cannot be said to be action by the state, within the intent and meaning of the fourteenth amendment. In such cases the grievance is simply that the state law has been broken, and not that the state has inflicted a wrong through its legislative, executive, or judicial department."

The next case referred to by the court is that of Hamilton Gaslight Co. v. Hamilton City, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963, from which an extract from the opinion is quoted. There is nothing in the quotation given which tends to sustain the contention of respondents in this case, because, as we have seen, the Constitution having vested in the municipality the discretionary power to fix rates, it cannot be said that the ordinance here involved was "not passed under supposed legislative authority." But, when the entire portion of the opinion in that case bearing on the subject of jurisdiction is considered, there is left no doubt as to the character of case to which it refers. The court there say:

"The plaintiff's first contention is that there is no statute of Ohio authorizing any city in which there are already gas works in full and complete operation to erect gas works, or to levy a tax for that purpose. If this were conceded, we should feel obliged, the plaintiff and defendant both being corporations of Ohio, to reverse the judgment, and remand the cause with directions to dismiss the suit for want of jurisdiction in the Circuit Court. The jurisdiction of that court can be sustained only upon the theory that the suit is one arising under the Constitution of the United States. But the suit would not be of that character, if regarded as one in which the plaintiff merely sought protection against the violation of the alleged contract by an ordinance to which the state has not, *in any form*, given *or attempted to give* the force of law. A municipal ordinance, not passed under supposed legislative authority, cannot be regarded as a law of the state within the meaning of the constitutional prohibition against state laws impairing the obligations of contracts. * * * A suit to prevent the enforcement of such an ordinance would not, therefore, be one arising under the Constitution of the United States. We sustain the jurisdiction of the Circuit Court because it appears that the defendant grounded its right to enact the ordinance in question, and to maintain and erect gas works of its own, upon that section of the Municipal Code of Ohio adopted in 1869 (now section 2486 of the Revised Statutes) providing that the city council of any city or village should have power, whenever it was deemed expedient and for the public good, to erect gas works at the expense of the corporation, or to purchase gas works already erected therein, which section, the plaintiff contends, if construed as conferring the authority claimed, impaired the obligation of its contract previously made with the state and the city."

It will thus be seen that that case simply holds that an ordinance will not be regarded as state action if it be "an ordinance to which the state has not *in any form* given *or attempted to give* the force of law." That as we have seen is not this case.

The only other authority referred to by the court is the case of Barney v. City of New York, 193 U. S. 430, 24 Sup. Ct. 502, 48 L. Ed. 737, which was a suit brought to enjoin the construction of a subway or tunnel at a certain point in its route on the ground that the easterly tunnel section was not within the routes and plans consented to by the abutting owners. The act of the Legislature under which the rapid transit board was acting empowered it to prescribe the routes and general plan of any proposed rapid transit railroad, and that the municipal authority and abutting property owners must consent to this construction on the routes and plans adopted, and any change in the details of the plans must likewise be consented to by the abutting owners. The case made by the complainant's bill in legal substance was that the tunnel was not being constructed along the route to which the property owners

had consented, and the court held that for that reason, if the objections of the complainant were correct, there was simply a violation of law by the state officials, and not any act of the state depriving the complainant of its property so as to bring it within the prohibition of the fourteenth amendment. In reaching that conclusion, the court reviewed a number of cases, and, among others, that of Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, in which the jurisdiction of the Circuit Court was upheld to enjoin unreasonable rates fixed by the State Railroad Commission, and in that connection used the language hereinbefore quoted in the case of Ozark-Bell Telephone Co. v. City of Springfield (C. C.) 140 Fed. 666, to the effect that the act of the board, although illegal, was nevertheless the act of the state, since it was proceeding under the grant of authority given it by the state. And the court expressly distinguished such a case from that which the court was there considering, in which, as it states, "defendants were proceeding not only in violation of provisions of the state law, but in opposition to plain prohibitions."

These authorities leave no room for doubt as to the proposition the court intended to decide in the Seattle case; and make it plain that there is nothing in that case antagonistic to the ruling denying the present motion.

The point was also made at the argument, but in a minor key, that the jurisdiction of this court is ousted because of the allegation that the ordinance in form violates the provisions of the charter under which it was passed in the respect above stated. This point is fully covered, I think, by the authorities hereinabove reviewed; but, independently of that consideration, the allegation is of a mere conclusion of law which adds nothing of substance to the effect of the bill (Ozark-Bell Tel. Co. v. Springfield, supra); and, moreover, the Supreme Court of the state has held that the provision of the charter in question is merely directory. Law v. San Francisco, 144 Cal. 384, 77 Pac. 1014.

I have devoted more space perhaps to the main question presented than is absolutely demanded by the facts; but it has been with an anxious desire to leave no room for the thought that the court would, either intentionally or inadvertently, ignore a pertinent ruling of its superior tribunal.