**Melvin DORN**

v.

**MEYERS PARKING SYSTEM and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Union Local Number 596.**

Civ. A. No. 74–3052.

United States District Court,
E. D. Pennsylvania.

June 9, 1975.

Stephen F. Ritner, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Mark S. Dichter, Edward B. Bergman, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Plaintiff, Melvin Dorn, has brought this action against his former employer, Meyers Parking System ("Company"), and his collective bargaining representative, Local 596 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Union"). Dorn, a Union member, alleges that he was discharged from employment by the Company in violation of the then-controlling collective bargaining agreement. He further alleges that the Union breached its duty of fair representation by refusing to proceed to arbitration with a grievance that he submitted based on this discharge. Jurisdiction was invoked under § 301 of the Labor Management Relations Act (Taft-Hartley Act), 29 U.S.C. § 185.[1]

The Union has filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The Union asserts two grounds to support its motion: (1) that absent a showing of bad faith on the part of the Union based on personal or political hostility, which the complaint here does not allege, relief is unavailable; and, (2) that plaintiff must exhaust his internal union remedies before seeking relief in the courts for a breach of the Union's duty of fair representation. For the

---

1. Plaintiff has also based jurisdiction on § 303 of the Taft-Hartley Act, 29 U.S.C. § 187. It is unnecessary to decide at this time whether jurisdiction is properly invoked under this section.

reasons stated below, the Court disagrees with the Union's contentions and, therefore, will deny its motion to dismiss the complaint.

■ When considering a motion to dismiss, the material allegations of the complaint are taken as admitted and the complaint is liberally construed in favor of the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L. Ed.2d 404 (1969). Applying this standard to the facts set forth in the complaint in the instant case, it is clear that plaintiff has stated a claim sufficient to withstand a motion to dismiss.

According to the complaint, plaintiff was employed by the Company as an attendant at its parking garage at a Philadelphia hotel from November, 1972, until his dismissal in October, 1973. Plaintiff alleges that he was discharged for an incident which took place at the garage on August 31, 1973. A woman patron of the garage complained that, while she was waiting for her automobile to be retrieved from where it was parked, plaintiff Dorn mistreated her. She claimed that he tried to flirt with her and that he became belligerent when she avoided his advances.

Although the garage manager discussed the accusation with plaintiff at the time of the incident, no warning was issued to him for any wrongdoing. Plaintiff alleges that the only discipline he received while employed at the garage was one oral reprimand concerning lateness. However, on October 26, 1973, plaintiff was discharged without prior opportunity to reply to any other charges of wrongdoing or improper action. He then submitted a grievance to the Union concerning his dismissal.[2]

Shortly thereafter, a meeting was held concerning this grievance. It was attended by plaintiff, the Business Representatives of the Union and the manager of the garage at which plaintiff had worked, who represented the Company. Plaintiff alleges that this meeting, representing the second step in the contractual grievance procedure, was the first opportunity he had to explain his position to either the Union representatives or the Company. Plaintiff alleges that, after hearing his story, the Union representatives agreed with his position and stated to the Company representative that plaintiff should not have been discharged. The Company disagreed with the Union's determination and refused to reinstate plaintiff to his former position with back pay.

Plaintiff alleges that, following the Company's refusal to reinstate him, he requested that the Union submit his grievance to arbitration. He further alleges that, despite their agreement that he should not have been discharged, the Union representatives "arbitrarily and capriciously refused to submit the dispute to arbitration" and "processed plaintiff's grievance in a perfunctory manner."

Plaintiff's underlying claim in this suit is that he was discharged by his employer without just cause, in violation of the controlling collective bargaining agreement. Assuming *arguendo* that his claim is valid, plaintiff must preliminarily overcome an obstacle erected by the Supreme Court in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), in order to obtain relief for this injury. The Court held in *Vaca* that in order to obtain judicial review of his breach-of-contract claim, "the employee

---

2. The collective bargaining agreement in force between the Company and the Union during plaintiff's employment included an exclusive three-step grievance and arbitration procedure. In the first step, the Union Steward was to attempt to resolve the problem. If that effort was unsuccessful, step two required the Business Representative of

the Union to meet with a Company representative in order to settle the matter. If the grievance was not settled in the second step, either the Union or the Company could submit the matter to an impartial arbitrator. Collective Bargaining Agreement, Article VIII (a) (attached as Exhibit A to the Complaint).

must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." *Id.* at 184, 87 S.Ct. at 914.

The Supreme Court noted an exception to this general rule where, as is true in the instant action, the union has sole power under the contract to invoke the higher stages of the grievance procedure, and it is further alleged that "the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance." *Vaca v. Sipes, supra* at 185, 87 S.Ct. at 914. (original emphasis). A wrongful refusal is indicated by proof that the union breached its duty of fair representation in its handling of the employee's grievance. *Id.* at 186, 87 S.Ct. 903.

■ A union's conduct toward a member of the collective bargaining unit violates its duty of fair representation when it is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes, supra* at 190, 87 S.Ct. at 916. The reference in *Vaca* to "arbitrary" action broadened the scope of union duty and undermined the continuing vitality of cases which required the showing of a bad faith motive or an intent to discriminate hostilely in order to prove a breach of the duty. *Duggan v. International Association of Machinists*, 510 F.2d 1086, 1088 (9th Cir.), *cert. denied,* —— U.S. ——, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975).

A union now violates its duty of fair representation, for example, when it either arbitrarily ignores a meritorious grievance or processes the claim in a perfunctory manner. *Vaca v. Sipes, supra* at 191, 87 S.Ct. 903; *Crenshaw v. Allied Chemical Corp.*, 387 F.Supp. 594,

600 (E.D.Va.1975). While it may · be true "that proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation," *Bazarte v. United Transportation Union,* 429 F. 2d 868, 872 (3d Cir. 1970), plaintiff here has alleged more than simply that. He asserts that the Union failed to investigate his grievance thoroughly and "arbitrarily and capriciously refused to submit the dispute to arbitration without giving reasons therefor." Plaintiff has stated a claim which, if proved at trial, would entitle him to the relief requested.

■ The Union alternatively contends that the complaint must be dismissed because plaintiff has failed to allege either that his internal union remedies have been exhausted or that they are inadequate or unavailable.[3] Admittedly, the Third Circuit rule requires that a union member exhaust the intra-union remedies available to him, or show an adequate reason for having failed to do so, before a suit charging the union with a breach of its duty of fair representation will be permitted in the courts. This rule furthers the admirable objective of postponing judicial interference in the internal affairs of a labor organization until it has had a prior opportunity to resolve disputes involving its own legitimate concerns. *Brady v. Trans World Airlines, Inc.,* 401 F.2d 87, 104 (3d Cir. 1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969); *Yeager v. C. Schmidt & Sons, Inc.,* 343 F.Supp. 927, 929 (E.D.Pa. 1972).

We find this exhaustion requirement somewhat troubling, however, in the

3. The present record does not establish the existence of any appellate procedure within the Union to review actions taken by the Local. Technically, the deficiency asserted by the Union is clear on the face of the complaint and, thus, within the limited boundaries of a Rule 12(b)(6) motion. However, as will be discussed *infra,* the facts required to decide a motion based on the defense of failure to exhaust internal union remedies will not generally be contained in the pleadings. It will be necessary for the movant to introduce outside factual material in support of the motion, thus converting the Rule 12(b)(6) motion to dismiss into a motion for summary judgment. Our discussion here will assume that an intra-union appellate procedure does exist and that it was not utilized by plaintiff.

context of an employee's suit against his employer for wrongful discharge under 29 U.S.C. § 185. In such actions, the employee's claim against his union is frequently only a necessary stepping-stone, mandated by *Vaca v. Sipes, supra,* to an examination of his real grievance, the discharge by the employer. Since *Vaca* made it clear that an employee is subject to the union's nonarbitrary, discretionary power to settle or abandon his grievance, even if it can later be established by proof that his underlying complaint against the employer was meritorious, *Bazarte v. United Transportation Union, supra* at 872, the requirement that the employee prove preliminarily a violation of the union's duty of fair representation presents a quite substantial obstacle to his obtaining a hearing on his breach-of-contract claim, even without considering the effect of the additional prerequisite that he exhaust his internal union remedies. This Court is concerned that the most frequent result of this additional exhaustion requirement may unfortunately be the "exhaustion" of deserving employees before they are able to obtain judicial relief for their wrongful discharge.

Another serious question raised by the application of the exhaustion-of-internal-union-remedies rule in this type of case is whether the ultimately successful employee, who takes his claim through the intra-union appellate procedure, will always obtain a totally compensatory remedy. If the higher tribunals within the union affirm the original decision not to pursue his grievance, an employee, if he still retains enough energy to continue the fight, will then be in a position to begin a suit against his employer and the union based on the *Vaca* model. Assuming he is successful in court, the employee will receive complete relief. The problem arises, however, when an intra-union appeal results in the reversal of an original decision to not pursue an employee's grievance and a ruling to carry the claim all the way through the grievance and arbitration procedure. It is in that type of case

that the union, as well as the employer, may receive an undeserved windfall.

In *Vaca,* the Supreme Court recognized that there are cases in which at least part of an aggrieved employee's damages may be attributable to the union's breach of duty. 386 U.S. at 196, 87 S.Ct. 903. Believing that the employer should not be liable for any increases in the damages due an employee caused by the union's wrongful refusal to process his grievance, and realizing that an arbitrator may have no power under the collective bargaining agreement to award damages against the union for a breach of its fair representation duty, the Court refused to hold that an order compelling arbitration was the only remedy available to a court when such a breach of duty was proved. Instead, the Supreme Court held that, where appropriate to insure complete relief to the employee, either damages or equitable relief would also be available against both the union and the employer. *Id.* at 196, 197–198, 87 S.Ct. 903.

The exhaustion-of-union-remedies rule may reopen precisely this loophole which the Supreme Court attempted to close in *Vaca.* This is true where the initial union refusal to process the grievance was based on arbitrary or discriminatory grounds constituting a breach of the duty of fair representation. A reversal of that decision by the union appellate tribunal, and an order to take the claim to arbitration, still leaves open the possibility that the employee will be unable to obtain an award at arbitration against the union for the increase in his damages due to the initial, wrongful refusal to process his grievance. The employee will simply be left without a remedy for this wrong. Thus, although not the intent of the requirement, strict obedience to the exhaustion rule could result in the immunization of a great deal of lower-level union wrongdoing.

It has been argued that the national policy favoring arbitration of labor disputes may be facilitated by requiring the exhaustion of internal union reme-

dies before suit can be brought. *Orphan v. Furnco Construction Corporation,* 466 F.2d 795, 800 (7th Cir. 1972); *Brookins v. Chrysler Corporation, Dodge Main Division,* 381 F.Supp. 563, 569 (E.D.Mich. 1974). The court in *Brookins* reasoned that:

> If the union's wrongful refusal to continue the grievance were reversed without prejudice to his rights, the employee would no longer have a cause of action for breach of the duty of fair representation, and consequently would have no right under *Vaca* to sue his employer for breach of contract. This conclusion is consistent with the national labor policy in favor of arbitration. 381 F.Supp. at 569.

The Court is not convinced that it will be possible, in the majority of cases, for the employee to obtain relief from the union appellate procedure such that he will have suffered no prejudice to his rights. As already discussed, there is the possibility that complete compensation may be unobtainable by the employee at arbitration following a union reversal of position.[4] There is also frequently a contractual time limit on the availability of arbitration, see *infra,* which is exceeded by the length of the union appellate process.

Without even considering these problems, however, we can see no appreciable benefit to the federal labor policy in favor of arbitration resulting from the intra-union remedies exhaustion requirement, except for that derived totally at the expense of the individual employee's interests. The exhaustion-of-contractual-remedies requirement of *Vaca v. Sipes, supra,* was admittedly designed to maintain the vitality of the arbitration system by funneling the settlement of disputes through the contractual grievance procedure, rather than the judicial system. At the same time, however, it was recognized that there is an inherent danger to the system in having too many grievances proceed all the way through the process to arbitration. The rule established in *Vaca,* requiring a showing of arbitrary, discriminatory or bad faith conduct in order to prove a breach of a union's duty of fair representation, was intended to maintain the union's incentive to settle the vast majority of grievances short of arbitration. 386 U.S. at 192–193, 87 S.Ct. 903. The problem involved in having too many claims arbitrated was explained by the Supreme Court as follows:

> This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L.M.R.A. § 203(d), *supra,* if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. 386 U.S. at 192, 87 S.Ct. at 917. (citations omitted).

The only real assistance to the system from the intra-union remedies exhaustion requirement results from its ability to wear down the employee and discourage him from further pursuit of his claim. If the original decision to not arbitrate a claim is affirmed, the status of

---

4. The collective bargaining agreement involved in the instant action provides for relief from an unjust discharge in Article IX(c). The arbitrator's powers are stated as follows:

Should an arbitrator find the employee to have been unjustly discharged or suspended, the arbitrator shall have the authority to reinstate the employee to his former job and in addition, if the arbitrator so chooses to order the employee to be compensated at his average hourly earnings for time lost, less pay for any penalty time decided upon and less any other earnings.

We do not find in this provision any indication that the arbitrator is empowered to remedy the harm caused by the Union's alleged breach of its fair representation duty.

the grievance is unchanged in relationship to the arbitration system. The employee must still look to the courts for relief.[5]

Conversely, in those instances when a union appeal results in a decision to take a grievance to arbitration, it will generally be for one of two reasons: either the union finds arbitrating the claim less troublesome than the risk of a finding of liability for a breach of the fair representation duty, or it genuinely believes that the original decision was erroneous and the claim deserves to be arbitrated. If the former becomes the basis for many of the union's decisions, despite the protection offered by the favorable standard established in *Vaca,* the caseload of the arbitration system will be significantly increased, with the consequent danger to the system discussed in *Vaca.* If the latter reason motivates the union appellate tribunal, the arbitration system will still be faced with an increased burden. In addition, the problem of the unavailability from arbitration of a complete remedy, which we have previously discussed, may be presented.[6]

Without wishing to unduly lengthen this opinion, we felt it important to express some of our doubts about the utility of an intra-union remedies exhaustion requirement in cases, such as the instant one, where the underlying claim is an alleged wrongful discharge by the employer. The opposing interests are clear.

On one side is the injured employee, who desires the right to sue his employer after he has given the union a reasonable chance to act on his behalf. On the other side, there is the union's desire to maintain the autonomy of its decision-making process through the opportunity for self-regulation prior to court intervention. The injured employee appears to have the most to lose in this situation. While a new balancing of the competing interests, different from the current one favoring the union, may thus seem appropriate, we think that any decision of that nature must be made by a higher court than this one.

■ Possibly due to the concerns which we have expressed, a substantial body of exceptions to this exhaustion requirement has been created by the courts. An intra-union appeal is not required if it would be futile or the remedy would be inadequate. It is also unnecessary where the union's appellate body might be biased, where the internal procedures might themselves be inadequate, or where the employee might be prejudiced by the delay involved in the internal appeal. *Yeager v. C. Schmidt & Sons, Inc., supra,* 343 F.Supp. at 929 and n. 3. "The union must show that there is a procedure available to the members within the union structure reasonably calculated to redress the *particular* grievance complained of." *Id.* at 929 (original emphasis). Finally, while we accept the idea that unjustified em-

5. We also doubt that requiring the exhaustion of intra-union remedies will lighten the burden on the courts. It is highly unlikely that an employee determined enough to take his claim through the union appeals process, based on his belief that he was wrongfully refused an opportunity to go to arbitration by his Local, will stop at the intra-union level if his appeal results in an adverse decision. We believe the rigors of litigation, rather than any conviction that the union appellate procedure provided an adequate and just hearing of his claim, will generally be the conclusive factor in those rare decisions by an unsuccessful appellant to not bring a subsequent court action against the union for breach of its duty of fair representation.

6. We reject the conclusion of *Brookins v. Chrysler Corporation, Dodge Main Division, supra,* that the existence of a union appellate procedure prevents a cognizable breach of the union's duty of fair representation from occurring prior to the exhaustion of the appellate procedure. That holding is analogous to the principle enunciated in *Barney v. City of New York,* 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737 (1904), that where state officials violate state law by conduct also prohibited by the Federal Constitution, if a state remedy exists, no unconstitutional state action has yet occurred. The *Barney* holding has been "firmly repudiated." *Wills v. Slayton,* 372 F.Supp. 776, 779 n. 5 (E.D. Va.1974).

ployee ignorance of available union remedies will not excuse a failure to exhaust, it is the union's burden to present facts showing that the procedures are generally known to the union membership. *Id.* at 930. If the procedures are not so known, the reason(s) therefor will be a factor to be considered in determining the necessity for exhaustion of the intra-union remedies. *See Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local No. 14,* 453 F.2d 1018, 1027 (9th Cir. 1972); *Forline v. Helpers Local No. 42,* 211 F.Supp. 315, 320 (E.D.Pa.1962).

This Court rejects the Union's contention here that plaintiff was required to allege in his complaint either that internal union remedies had been exhausted or that they were inadequate or unavailable. Rather, where a union moves to dismiss the complaint on the ground of failure to exhaust, it has the initial burden of placing before the court facts establishing that union remedies are available to the plaintiff and that plaintiff has neglected to use them. Only when faced with the assertion of this defense by the union must the plaintiff then place facts in the record which would excuse his failure to resort to union procedures.[7] *Yeager v. C. Schmidt & Sons, Inc., supra* at 929, 930.

Moreover, in the instant case, it appears that plaintiff could excuse his failure to exhaust whatever intra-union remedies might exist on the grounds that an appeal would be futile or that he would be unduly prejudiced by the delay involved. The grievance procedure in the collective bargaining agreement provided as follows:

> [I]n the event of a failure by the Business Representative of the Union and the Company to settle the matter, either party may submit the matter to the impartial arbitrator, *provided the party desiring to appeal to arbitration notifies the other party in writing within ten (10) days after the meet-*

*ing* of the Business Representative of the Union and the Company of its intention to appeal to arbitration. Article VIII(a) (attached as Exhibit A to the Complaint) (emphasis added).

This Court believes it would have been futile for plaintiff to attempt to successfully appeal the refusal of the Local to arbitrate his grievance within the ten-day period provided to the Union or the Company in which to invoke arbitration. *Sciaraffa v. Oxford Paper Company,* 310 F.Supp. 891, 902 (D.Me.1970).

Accordingly, for all of the above-stated reasons, the Union's motion to dismiss the complaint will be denied.